# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

US Airways, Inc. and AIG,      :
              :
      Petitioners     :
              :
       v.        :   No. 1278 C.D. 2015
              :   Submitted: January 29, 2016
Workers' Compensation Appeal    :
Board (Genovese-Smith),      :
              :
      Respondent    :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
      HONORABLE ANNE E. COVEY, Judge
      HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**        **FILED: May 11, 2016**


  US Airways, Inc. (Employer) and its insurer petition for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision and order of a Workers' Compensation Judge (WCJ) granting the reinstatement petition of Paula Genovese-Smith (Claimant). Because the injury on which the reinstatement of benefits was based is a condition different from the accepted work injury and Claimant did not present unequivocal medical evidence that this new injury was caused by her work injury or by any work-related incident, we reverse.

  Claimant, a flight attendant with Employer, suffered a fall getting into an airport van on September 16, 2007, in which she hit her head and right hip on

the pavement. (12/28/11 WCJ Decision Findings of Fact (F.F.) ¶¶1, 8(c).) Employer accepted liability for this accident by a Notice of Temporary Compensation Payable (NTCP), converted by operation of law to a Notice of Compensation Payable (NCP), that described the work injury as a "contusion/laceration" of the "right hip, groin, forehead." (12/28/11 WCJ Decision at 1; NTCP, R.R. at 47a.) Claimant returned to work in her pre-injury flight attendant position without restrictions three months later, and her disability benefits were suspended. (12/28/11 WCJ Decision F.F. ¶¶1, 8(c); 4/17/14 Board Decision at 5; 5/4/10 Hearing Transcript (H.T.) at 9, 18, R.R. at 118a, 127a.)

Claimant continued to work for Employer as a flight attendant until 2010, when she took a leave without pay at age 68 after she did not pass a recurrent training required by Employer. (12/28/11 WCJ Decision F.F. ¶¶1, 8(c); 5/4/10 H.T. at 9-10, 13-17, 22-24, R.R. at 118a-119a, 122a-126a, 131a-133a.) On February 22, 2010, Claimant filed the instant reinstatement petition, alleging that her work injury had worsened and caused a loss of earning power as of that date. On August 25, 2010, Claimant underwent right hip replacement surgery for degenerative arthritis of the right hip. (12/28/11 WCJ Decision F.F. ¶¶4, 8(a).) Employer, following a medical examination of Claimant, filed a termination petition asserting that Claimant had fully recovered from her work injury as of December 1, 2010.

The WCJ held hearings on the two petitions at which Claimant testified. Claimant testified that her right hip hurt following her September 2007 fall and that this right hip pain continued when she returned to work and had increased. (5/4/10 H.T. at 9-13, 21, R.R. at 118a-122a, 130a.) Claimant further testified that her right hip pain affected her ability to perform in the recurrent

2

training and that she had no problems with her right hip prior to her fall. (*Id.* at 8, 13-14, 23, R.R. at 117a, 122a-123a, 132a.)

Depositions of Dr. Baddar, the orthopedic surgeon who performed Claimant's right hip replacement, and Dr. Elia, an orthopedic surgeon who examined Claimant on behalf of Employer, were submitted on the issues of Claimant's condition in 2010 and whether the hip replacement was causally connected to Claimant's September 2007 work-related fall. Both Dr. Baddar and Dr. Elia testified that Claimant suffered from severe degenerative right hip arthritis in 2010, that this arthritis was the reason for her hip replacement surgery and that Claimant had moderate to advanced arthritis in her right hip before her September 2007 fall. (Baddar Dep. at 7-9, 16-20, 27, 31-32, R.R. at 19a-21a, 28a-32a, 39a, 43a-44a; Elia Dep. at 21, 23-24, R.R. at 69a, 71a-72a**.)** Neither physician testified that Claimant continued to suffer from a right hip laceration or contusion in 2010.

With respect to whether Claimant's 2010 arthritic condition and surgery were caused by the September 2007 fall, Dr. Baddar testified on direct examination:

> Q. With regard to the fall on September 16, 2007, can you tell us, with regard to this hip replacement surgery, with her condition indicated on the CT scan with the arthritis, could that arthritic condition be -- I'm sorry -- could the fall on 9/16/07 precipitated [*sic*] the need for surgery that you recently performed?
>
> A. Yes.
>
> Q. And why is that?
>
> A. <u>It could have advanced or worsened the arthritis</u>. In her case, taking it from being asymptomatic to symptomatic.

3

Q. The fact she had no symptoms in the past before the 9/16/07 injury, do you believe that to be significant with regard to your opinion on that -- the need for surgery was precipitated by this 9/16/07 event?

A. Yes, that's reasonable.

Q. What does trauma of this nature do to a pre-existing condition of arthritis as reflected on the CT scan?

A. I mean, it's variable, but it can very well -- if you have already got a joint or a tissue that's injured, I mean, it's more at risk to be worsened or damaged from a trauma. So, it is susceptible, and it's more susceptible to an injury.

Q. Do you believe that's what happened in this case?

A. Yes.

Q. Okay, and does trauma of this nature that she suffered on 9/16/07, with this pre-existing arthritic condition, can that accelerate the need for the surgery that you performed in this case?

A. Yes.

Q. Okay. All right. Doctor, have all your opinions today been expressed to a reasonable degree of medical certainty?

A. Yes.

(Baddar Dep. at 9-11, R.R. at 21a-23a) (emphasis added). On cross-examination, Dr. Baddar stated that the issue on which he was offering his expert opinion was "whether a fall could have worsened her arthritis," and further testified:

Q. Is it safe to say you cannot testify within a reasonable degree of medical certainty as to the exact cause of the claimant's need to [sic] right hip surgery prior to your seeing her in August of 2010?

\*         \*         \*

4

THE WITNESS: What I would say is that based on, as you've said, what the patient has described to me, that this was a precipitating factor for her head [*sic*] pain and, therefore, is a <u>reasonable cause for her worsening of her arthritis and requiring a hip replacement</u>.

\*             \*             \*

Q. To be sure then, without seeing any medical records surrounding the CPPD [calcium pyrophosphate disease, noted as a possible condition on an MRI], you cannot testify to the exact cause of the claimant's right hip condition which led to her surgery in 2010; correct?

A. Actually, no. I would say no.  Again, the point I would be making is that I'm not arguing whether she had pre-existing arthritis. I think that's established by her CT scan that was done two weeks after her injury. That's of a longstanding nature.  As to the question, <u>did it worsen her arthritis, I think it's reasonable</u>. It doesn't matter to me what was the underlying cause of her initial arthritis, whether that was from a pre-existing injury, CPPD or rheumatoid arthritis or anything or just osteoarthritis.  The question, <u>could it have worsened it no matter what the preceding cause is, yes, it could have worsened it</u>.

(*Id.* at 25-26, 28-29, 31-32, R.R. at 37a-38a, 40a-41a, 43a-44a) (emphasis added). Dr. Elia opined that Claimant's arthritis and hip replacement were unconnected to her 2007 injury and were due to the natural aging process.  (Elia Dep. at 23-24, R.R. at 71a-72a**.**)

On December 28, 2011, the WCJ issued a decision granting Claimant's reinstatement petition and denying Employer's termination petition.  In this decision, the WCJ found Claimant's and Dr. Baddar's testimony credible and rejected the testimony of Dr. Elia to the extent that it conflicted with Dr. Baddar's testimony.  (12/28/11 WCJ Decision F.F. ¶8.)  The WCJ found that Dr. Baddar "opined that … [t]he fall claimant sustained on September 16, 2007 aggravated her

5

pre-existing degenerative condition of the right hip and precipitated the need for the hip replacement surgery," and concluded that Claimant had therefore satisfied her burden on the reinstatement petition of proving that she suffered a loss of earning power related to her work injury. (*Id.* F.F. ¶4, Conclusion of Law (C.L.) ¶2.) With respect to the termination petition, the WCJ found that Employer had not sustained its burden of proving that Claimant had fully recovered from her work injury. (*Id.* C.L. ¶3.)

Employer timely appealed and the Board, on April 17, 2014, affirmed the WCJ's decision but remanded the case for a determination of whether Employer was entitled to a credit for Social Security retirement benefits that Claimant had received. On remand, a second WCJ issued a decision, not at issue in this appeal, holding that Employer was not entitled to any offset for Social Security benefits. On June 30, 2015, the Board affirmed this second WCJ decision and made final its April 17, 2014 affirmance of the WCJ decision granting Claimant's reinstatement petition and denying Employer's termination petition. This appeal followed.[1]

In this Court, Employer challenges only the WCJ's ruling on Claimant's reinstatement petition and does not seek reversal of the denial of its termination petition. (Petitioner's Br. at 8.) Employer argues that the WCJ erred in granting Claimant's reinstatement petition because Dr. Baddar's testimony was equivocal and therefore legally incompetent. We agree.

---

[1] Our review is limited to determining whether an error of law was committed, whether the WCJ's necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Soja v. Workers' Compensation Appeal Board (Hillis-Carnes Engineering Associates)*, 33 A.3d 702, 706 n.3 (Pa. Cmwlth. 2011).

6

A claimant who seeks reinstatement of suspended disability benefits under the Workers' Compensation Act[2] must prove 1) that her earning power is once again adversely affected by her work injury and 2) that the disability that gave rise to her original claim continues. *Bufford v. Workers' Compensation Appeal Board (North American Telecom)*, 2 A.3d 548, 558 (Pa. 2010); *Latta v. Workmen's Compensation Appeal Board (Latrobe Die Casting Co.)*, 642 A.2d 1083, 1084 (Pa. 1994); *Dougherty v. Workers' Compensation Appeal Board (QVC, Inc.)*, 102 A.3d 591, 595 (Pa. Cmwlth. 2014). Because a suspension of disability benefits acknowledges the continuation of the work injury and is based only on the fact that the claimant's earning power is not affected, expert medical testimony that the work injury continues is not required and the claimant may satisfy the second element, continuation of the work-related disability, through her own testimony. *Latta*, 642 A.2d at 1085; *Dougherty*, 102 A.3d at 595; *Soja v. Workers' Compensation Appeal Board (Hillis-Carnes Engineering Associates)*, 33 A.3d 702, 708 (Pa. Cmwlth. 2011). Where, as here, the claimant had returned to her pre-injury position with no restrictions, however, there is no presumption that loss of earning power is related to the work injury and the claimant must affirmatively prove that the work injury caused her loss of earnings. *Dougherty*, 102 A.3d at 595; *Trevdan Building Supply v. Workers' Compensation Appeal Board (Pope)*, 9 A.3d 1221, 1224 (Pa. Cmwlth. 2010).

Moreover, the injury on which reinstatement of benefits is based must be the work injury recognized in the NCP or a prior decision granting disability benefits. *Soja*, 33 A.3d at 708; *Wetterau, Inc. v. Workmen's Compensation Appeal Board (Mihaljevich)*, 609 A.2d 858, 860 (Pa. Cmwlth. 1992); *Riley Welding &*

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

*Fabricating, Inc. v. Workmen's Compensation Appeal Board (DeGroft)*, 608 A.2d 598, 600 (Pa. Cmwlth. 1992). To obtain a reinstatement of suspended disability benefits, "the claimant must establish 'that his earning power is once again adversely affected' and that 'it is the same disability ... for which he initially received workmen's compensation benefits.'" *Soja*, 33 A.3d at 708 (quoting *Riley Welding & Fabricating, Inc.*) (ellipsis in original). Unless the causal connection between a new or different injury and the accepted work injury or the work accident is obvious, the claimant must present unequivocal medical evidence of causation. *Namani v. Workers' Compensation Appeal Board (A. Duie Pyle)*, 32 A.3d 850, 856 n.4 (Pa. Cmwlth. 2011); *City of Pittsburgh v. Workers' Compensation Appeal Board (Wilson)*, 11 A.3d 1071, 1075 (Pa. Cmwlth. 2011); *Wetterau, Inc.*, 609 A.2d at 860.

Here, Claimant's disabling condition for which she sought reinstatement of benefits was not the same condition for which she had previously received workers' compensation benefits. The only injuries to Claimant's right hip that Employer accepted in its converted NTCP were a "contusion" and a "laceration." The condition from which Claimant suffered in 2010 and on which the WCJ based his grant of the reinstatement petition was degenerative arthritis of the right hip that necessitated hip replacement surgery. Because the causal connection between a contusion or laceration or a fall and severe arthritis more than two years later is not obvious and it was undisputed that Claimant had degenerative arthritis of her right hip prior to her work accident, Claimant was required to present unequivocal medical testimony that her September 2007 fall or the contusion or laceration suffered in that fall caused an aggravation of her right hip arthritis and need for hip replacement. *City of Pittsburgh*, 11 A.3d at 1072-77

8

(reversing amendment of NCP to add aggravation of cervical degenerative disc disease where NCP was for thoracic strain and unequivocal medical testimony supported only thoracic and cervical strains and rotator cuff tears); *Wetterau, Inc.*, 609 A.2d at 860 (claimant was required on reinstatement petition to prove by unequivocal medical testimony connection between injury to his ankle and surgery on that ankle more than two years later and six months after claimant returned to his time of injury job).

No unequivocal medical testimony was presented to the WCJ on which he could find that Claimant's arthritis was aggravated by her work injury or work accident. Medical expert testimony that is less than positive or is based upon possibilities is equivocal and is not legally competent to establish a causal relationship. *Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*, 498 A.2d 800, 802 (Pa. 1985); *Potere v. Workers' Compensation Appeal Board (Kemcorp)*, 21 A.3d 684, 690-91 (Pa. Cmwlth. 2011); *Merchant v. Workers' Compensation Appeal Board (TSL, Ltd.)*, 758 A.2d 762, 770 (Pa. Cmwlth. 2000). Whether a medical expert has unequivocally testified that the claimant's injury and disability were caused by the workplace incident must be determined from examination of the medical witness's entire testimony taken as a whole. *Lewis*, 498 A.2d at 803; *Potere*, 21 A.3d at 690; *Merchant*, 758 A.2d at 770.

The only medical evidence of a causal relationship was Dr. Baddar's testimony. Dr. Baddar, however, did not state at any point in his testimony that in his opinion, Claimant's fall or her contusion or laceration aggravated or worsened her arthritis or that in his opinion, the need for hip replacement was caused by the fall or Claimant's accepted work injury. To the contrary, Dr. Baddar repeatedly

made clear on both direct examination and cross-examination that he was only offering an opinion that the fall "could have" advanced or worsened Claimant's arthritis and "can" accelerate the need for surgery, and that the fall was a "reasonable" cause or explanation for the worsening of her arthritis and the need for hip replacement. (Baddar Dep. at 9-11, 25-26, 29, 31-32, R.R. at 21a-23a, 37a-38a, 41a, 43a-44a.)   Such testimony that a causal connection is possible or that it is a reasonable explanation does not constitute competent evidence. *See, e.g., Merchant*, 758 A.2d at 770-71 (testimony was equivocal and incompetent to prove causation where expert opined only that claimant's medical problem "could well be" or "probably" was a result of the work injury and expert never stated that she believed that claimant developed the condition as a result of the work injury); *Somerset Welding & Steel v. Workmen's Compensation Appeal Board (Lee)*, 650 A.2d 114, 117 (Pa. Cmwlth. 1994) (testimony that "something" aggravated claimant's back problem and that the work incident "could" be that cause was equivocal and incompetent to prove causation where expert never expressed opinion that the work incident was the cause).

The fact that the WCJ found Dr. Baddar credible and felt that his testimony was unequivocal does not change this.  Whether expert testimony is equivocal is an issue of competence, not credibility, and is a question of law subject to this Court's plenary, *de novo* review.  *Lewis*, 498 A.2d at 803; *BJ's Wholesale Club v. Workers' Compensation Appeal Board (Pearson)*, 43 A.3d 559, 565 (Pa. Cmwlth. 2012); *Potere*, 21 A.3d at 690.

Because the injury on which Claimant's reinstatement petition was based was not her accepted work injury and there was no competent medical evidence that this different injury was caused by her work injury or the work

accident, Claimant failed to satisfy her burden of proof that her loss of earning power was caused by her work injury. The Board's order must therefore be reversed insofar as it affirmed the WCJ's granting of Claimant's reinstatement petition.[3]

_____
JAMES GARDNER COLINS, Senior Judge

---

[3] Employer also seeks reversal of the grant of the reinstatement petition on the grounds that Claimant's loss of income was unrelated to the work injury because she failed the recurrent training for a reason other than her hip pain and that the WCJ did not issue a reasoned decision. While we need not reach these issues, it does not appear that either of these arguments would constitute grounds for reversal. With respect to the first of these arguments, Claimant testified that her hip pain affected her performance in the recurrent training and the WCJ found that testimony credible. With respect to the second, although the WCJ erred as a matter of law in holding that Dr. Baddar's testimony was unequivocal, his explanations of his credibility determinations and the bases for his decision are sufficient to satisfy the requirement of Section 422 of the Workers' Compensation Act that he issue a "reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains [its] rationale" and that "the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence." 77 P.S. § 834. *See Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Co.)*, 893 A.2d 191, 194-96 (Pa. Cmwlth. 2006).

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

US Airways, Inc. and AIG, : 
 : 
          Petitioners : 
 : 
          v. :   No. 1278 C.D. 2015
 : 
 : 
Workers' Compensation Appeal : 
Board (Genovese-Smith), : 
 : 
          Respondent : 

## **O R D E R**

AND NOW, this 11th day of May, 2016, the order of April 17, 2014 of the Workers' Compensation Appeal Board in the above matter is REVERSED insofar as it affirmed the granting of the reinstatement petition filed by Claimant Paula Genovese-Smith.

_____

JAMES GARDNER COLINS, Senior Judge