515 A.2d 1009

George Hartzell, Petitioner *v.* Workmen's Compensation Appeal Board (Bowen McLaughlin, York Div.), Respondents.

Argued September 11, 1986, before Judges CRAIG, COLINS and PALLADINO, sitting as a panel of three.

*Donald L. Reihart, Laucks & Monroe,* for petitioner.

*W. Jeffrey Sidebottom, Barley, Snyder, Cooper & Barber,* for respondents.

OPINION BY JUDGE CRAIG, October 1, 1986:

Does an expert medical opinion that the claimant has fully recovered and may return to his pre-injury employment constitute substantial competent evidence to uphold the referee's termination of benefits where the physician, based upon a physical examination of the

claimant, first opined that the disability continued, but changed his diagnosis after viewing a surveillance videotape of the claimant moving about apparently without limitation?

Claimant George Hartzell suffered a back injury on January 30, 1979, in the course of his employment at Bowen McLaughlin, York Division (BMY). He began receiving workmen's compensation benefits for total disability. On September 8, 1983, BMY filed a petition to terminate the claimant's benefits, alleging that he had fully recovered from his work-related injury as of August 26, 1983.

During hearings before the referee, BMY introduced a videotape made by an investigator hired by BMY during a period of five days in August and October of 1983. The videotape showed the claimant engaging in various physical activities. The referee found that "[the videotape] showed no apparent disability, and Claimant had no problem bending, squatting, walking, crossing his legs, or negotiating steps whatsoever." Based upon that videotape, which he accepted over the claimant's complaints of pain, and upon the expert testimony of three physicians who examined the claimant and viewed the videotape, the referee granted BMY's petition to terminate benefits.[1] By order dated October 4, 1985, the Workmen's Compensation Appeal Board affirmed that decision.

---

[1] In Finding of Fact No. 6, the referee stated:
Based on all the evidence introduced, this Referee finds the Claimant's testimony not credible and accepts the medical testimony introduced by the Defendant, particularly that of Dr. Joseph Danyo, and finds that the Claimant, as of August 24, 1983, the date of Dr. Danyo's examination, as again supported by Dr. Stitzell's examination of August 26, 1983, had fully recovered from his workmen's compensation injury of January 31, 1979, and could resume, without limitation, his pre-injury occupation of radial drill or drill press operator. . . .

The claimant primarily argues that the referee erred by basing his decision upon the videotape and upon medical testimony which he contends was improperly dependent upon the videotape.

As the claimant correctly points out, films alone are inadequate to sustain the evidentiary burden of showing that a claimant's disability has been reduced. *DeBattiste v. Anthony Laudadio & Son,* 167 Pa. Superior Ct. 38, 74 A.2d 784 (1950). However, properly authenticated and identified motion pictures are admissible evidence for the purpose of establishing facts. *DeBattiste,* 167 Pa. Superior Ct. at 42, 74 A.2d at 786.

However, citing *Mertz v. Mellon National Bank and Trust Co.,* 11 Pa. Commonwealth Ct. 541, 314 A.2d 570 (1974), the claimant contends that the law requires that the party with the burden of proof must, in order to prove a reduction or termination of disability, present a medical opinion which the expert reached without consulting the surveillance film. In *Mertz,* the court, concluding that the employer had maintained its burden of proving no disability based primarily upon the expert testimony of an impartial witness, characterized the film evidence as merely "corroborative of the employer's medical testimony," and apparently not dependent upon it. *Mertz,* 11 Pa. Commonwealth Ct. at 544, 314 A.2d at 572. However, we decline to apply the narrow interpretation which the claimant suggests.

Admittedly, both Drs. Danyo and Stitzell relied upon the videotape in forming their ultimate conclusions that the claimant was no longer disabled. However, according to Dr. Danyo's testimony, the videotape corroborated the inconsistencies which the physical examination revealed. He stated:

Q. Now, Doctor, very briefly could you tell us what your review and impressions were of the video in comparison to what he told you in

terms of his examination? What do you recall from the video?

A. Well, on the video he was able to get in and out of a car in a normal fashion. He bent over into his trunk normally and hauled out a tire. . . . He walked in a normal fashion. . . . So these things were at odds with what was visualized. . . . [T]he combination of what he said on exam, how he behaved during the exam, what was found on examination with what should be found with an individual with real pain, added up to someone who didn't have those symptoms.

Further, Dr. Stitzell indicated that, in some instances, a videotape record reveals the patient's true physical condition, when a physical examination, consisting primarily of subjective testing, cannot.[2] He stated:

I have had similar patients in Michigan that I followed from General Motors, and I mean I have followed them over a period of anywhere from five to six years, and I have even unfortunately seen one or two of them who were so good that I was totally sold that what was presented to me in my office as being clinical exams. I tend if anything to lean in favor of the patient, but when I have concrete evidence laid in front of me showing me what this patient can do with a videocassette, there is no denying

---

[2] Dr. Stitzell testified:

Q. Doctor, the findings that you found during your examination, were they basically subjective in nature, and what I mean to say is that the testing that was done, was it within the control of the patient during your examination?

A. Almost all of the testing was subjective with the exception of the reflex testing, and the reflex testing was totally normal.

what this patient is able to do, despite the fact that he says that there is pain that is unsurmountable and that he says that he cannot do this, that, or the other function.

When I am shown a video cassette which shows me not only can he do it, but he does it as well as he would expect a normal individual to do it, I have to observe the fact that I, as well as any other of my colleagues, have been taken in.

Accordingly, under the present facts, the combination of a physical examination and a viewing of the videotape constitutes substantial competent evidence.

The claimant next alleges that the referee unduly limited his opportunity to explain and rebut the contents of the videotape. However, the referee permitted both the claimant and his wife to state their versions of what happened in contrast to what the claimant contended the videotape selectively presented. The referee excluded only the claimant's argumentative commentary with respect to the videotape. The claimant's attorney did not object, but instead instructed the claimant to limit his testimony to his activities, and to the effect those activities had on him.

In *Kope v. Workmen's Compensation Appeal Board (Borg Warner Corp.)*, 98 Pa. Commonwealth Ct. 341, 510 A.2d 1294 (1986), Judge COLINS, concluding that the referee had not erred by limiting the claimant's opportunity to rebut the surveillance film, stated:

Since the rebuttal evidence was not offered to show that the events depicted did not occur, there was no reason for the referee to hear further testimony from the claimant.

98 Pa. Commonwealth Ct. at 345, 510 A.2d at 1296. We adopt that reasoning here.

Finally, we conclude that the referee committed no error by ruling against the claimant's offer of proof to

suggest, through the testimony of a police officer,[3] that, because the claimant discovered vandalism as to his automobile and residence during the surveillance period, a link existed between the surveillance team and the vandalism. The referee may make findings based upon reasonable inferences from proven facts. *See Bogavich v. Westinghouse Electric and Manufacturing Co.,* 162 Pa. Superior Ct. 388, 57 A.2d 598 (1948). Accordingly, where the claimant sought to introduce the officer's testimony solely to support a far-reaching inference of vandalism, but offered no proof of more substance, the referee properly refused to admit that testimony because he considered that inference unreasonable.[4]

Because the referee's findings of fact are supported by substantial evidence and because he has committed no errors of law, we affirm.

ORDER

NOW, October 1, 1986, the order of the Workmen's Compensation Appeal Board, dated October 4, 1985, at A-88556, is affirmed.

---

[3] The claimant's counsel stated that the officer would testify that he received information from the claimant concerning two reports of vandalism on or about August 5, and that he was aware that investigators were conducting surveillance from the house across from the claimant's residence.

[4] The referee stated:
The Referee will not permit that kind of an inference to be made. I would never think of it. If you got some eyewitness, that's one thing, but not having anybody come in here and report that they had—in their official capacity they got reports through a third person that there was vandalism.