Brian SOJA, Petitioner

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (HILLIS–CARNES
ENGINEERING ASSOCIATES), Re-
spondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 24, 2011.

Decided Nov. 7, 2011.

Reargument Denied Jan. 6, 2012.

Edward G. Krowiak, Scranton, for petitioner.

Philip C. Keidel, III, Reading, for respondent Hillis–Carnes Engineering Associates.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

Brian Soja (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) reinstating his disability compensation for a limited period of time and suspending it thereafter. In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that Claimant failed to prove that his disability continued through the reinstatement proceeding. Claimant argues that he did not have to show that his disability was continuing and, therefore, it is irrelevant that the WCJ found his testimony of a continuing disability at the hearing untruthful. For the reasons that follow, we affirm.

In 2005, while working as a manual laborer for Hillis–Carnes Engineering Associates (Employer), Claimant sustained an injury to his lower back when he pulled a heavy piece of equipment from a ditch. The work injury aggravated Claimant's underlying degenerative disc disease in his lower back. Employer accepted this injury under an agreement of compensation payable, and Claimant returned to work soon thereafter.

In January 2006, while working for a new employer as a truck driver, Claimant sneezed, thereby exacerbating his 2005 back injury. Employer accepted liability for an aggravation of Claimant's underlying disc disease, a protrusion at the L3/4 level, and an annular tear of a disc at the L4/5 level. Employer paid Claimant total disability benefits for one month, with benefits suspended thereafter.

In April 2006, Claimant went to work for yet another employer, Liberty Linehaul West, as a truck driver. In October 2006, while bending over to tie his shoe at home, he experienced intense pain to his back that radiated down his left leg and into his foot. Claimant filed a reinstatement petition, seeking temporary total disability as of November 1, 2006. Employer moved to have Liberty Linehaul West joined as a defendant. Hearings before the WCJ be-

gan in February 2007 and concluded in April 2008.

At the first hearing in February 2007, Claimant testified that his back and leg pain were on-going and interfered with sleep, even when he takes prescription pain medication. He further testified that he had been prescribed a cane; was undergoing cortisone treatments to his back; and that surgery was under consideration.

In November 2007, Claimant again testified about his ongoing disability. He stated that he has difficulty climbing the stairs, suffers increased pain and needs to use the cane constantly.

In April 2008, Claimant testified for the third and final time. He reported that his legs were constantly numb and that the pain was increasing. He could no longer drive safely because, at times, he was unable to move his legs. Claimant explained that he needs $49,000 to build a bathroom and bedroom on the first floor of his home to accommodate his disability.[1] He stated that on occasion he urinates in the kitchen sink, rather than attempt the stairs, which he can do only by crawling. He stated that he needs a cane "pretty much constantly." Reproduced Record at 202a (R.R. ——). He acknowledged that he owns a pick-up truck, but stated that he drives it only when necessary because he is a single parent. When asked about hobbies, he explained that he likes to fish but can do so only on rare occasions. Claimant presented the testimony of three friends, who confirmed that Claimant has difficulty with standing or walking.

In further support of his reinstatement petition, Claimant presented the deposition testimony of Matthew Haley, D.O., taken September 19, 2007. Dr. Haley is board certified in family practice and began treating Claimant on July 19, 2005, for his work injury. Dr. Haley diagnosed Claimant as suffering bilateral lumbar spasms caused by the work injury. An MRI showed lumbar disc disease and degenerative changes, which were exacerbated by the July 2005 work injury. Following treatment, Claimant returned to work with restrictions on heavy lifting. Dr. Haley advised Claimant to look for employment that did not involve lifting heavy equipment.

In August 2006, Claimant came to Dr. Haley's office in a wheelchair, complaining of difficulty moving. Claimant did not report a new injury, so Dr. Haley attributed the complaints of pain to the 2005 work injury. A second MRI indicated increasing degenerative disc disease and a new disc herniation. As of October 18, 2006, Dr. Haley concluded that Claimant could not return to work. Dr. Haley observed that Claimant is never free of pain.

Claimant also presented the January 29, 2008, deposition testimony of Patrick Fricchione, M.D., who did an IME of Claimant on August 28, 2007, at the request of Liberty Linehaul West, Claimant's employer in October 2006.[2] Dr. Fricchione is board certified in the treatment of emergency medicine. At the time of Dr. Fricchione's IME, Claimant reported lower back pain that radiated into both his hips and legs; occasional leg numbness; and difficulty walking. Dr. Fricchione opined that Claimant suffered multilevel lumbar degenerative disc disease and that Claimant's ongoing symptoms of pain were caused by the 2005 work injury. He believed Claimant had a "temporary total disability," that

1. Claimant's counsel explained that a petition to pay for the remodeling was not before the WCJ; however, Claimant's testimony was relevant to show the extent of his disability.

2. Employer withdrew its joinder petition against Liberty Linehaul West.

lasted "at least up until the time [of the August 2007 IME]." R.R. 340a, 343a.

In response, Employer presented the deposition testimony of Scott K. Epstein, M.D., who is board certified in physical medicine and rehabilitation. He did an IME of Claimant on March 8, 2007, at which Claimant reported back pain that radiated to his legs and a loss of feeling in his left knee. Claimant also reported that his pain was constant; flared with any movement, such as a cough; flared when standing up from a bent position; and increased when he reclined in any position other than a fetal position. Claimant reported that he needs a cane to walk. Dr. Epstein also reviewed Claimant's medical records. Dr. Epstein concluded that Claimant's 2005 injury was a lumber strain and annular tear at the L4/5 level. He also opined that the injury at the L2/3 and L3/4 levels shown in October 2006 tests was not related in any way to the 2005 injury. On cross-examination, Dr. Epstein acknowledged that his opinion that the L2/3 and L3/4 disc problems were new and not related to the 2005 work injury was contrary to the stipulation of the parties.

Employer then offered a surveillance videotape of Claimant, which was done on April 24, 2008, the very day he testified before the WCJ for the third, and final, time. The video showed Claimant walking to and from the WCJ hearing limping and leaning on a cane. After the hearing, Claimant is seen driving in his pickup truck to a house where he picks up a passenger, and the two travel over thirty miles to an automotive salvage yard. Claimant climbs out of the truck without difficulty and does not use a cane to walk in the salvage yard. Claimant lies on the ground to remove a part from the bottom of a van and places a hand jack under the van. After his friend changes the tire, Claimant uses a wrench to tighten the lug

nuts on the tire. As he does so, Claimant bends and twists his body. Claimant is seen jumping into the back of his truck and throwing auto parts into it. At no point in the surveillance video is Claimant seen using a cane or walking with a limp. The tape shows Claimant leaning on the van and holding his back while he moves to a standing position.

The WCJ did not accept Dr. Epstein's opinion that Claimant suffered a new injury in October 2006 because it conflicted with the stipulation of the parties. He accepted the opinion of Claimant's medical experts that Claimant's ongoing pain symptoms were due to the 2005 work injury but rejected their opinion that Claimant was unable to work. Claimant's own actions, as shown on the video, contradicted their opinion at least as of April 24, 2008. The WCJ found that Claimant could walk without a cane, bend over and down, lie on the ground and lift himself from that position without difficulty. At the hearing that same day, however, Claimant had testified that his pain made it impossible to walk without a cane and severely limited his movements. The WCJ rejected that testimony of Claimant as well as that of his friends.

The WCJ concluded that as of November 1, 2006, Claimant was disabled from performing his usual occupation as a truck driver by reason of his pain symptoms related to his 2005 work injury. The WCJ granted benefits through April 23, 2008, and suspended them as of April 24, 2008. The WCJ found that Claimant failed to prove a continued inability to work as of the day of the video.

Claimant appealed to the Board, arguing that Employer did not prove a basis for the WCJ to suspend benefits because a video is not substantial evidence. The Board agreed that a video alone cannot support an employer's suspension petition

to reduce a claimant's disability benefits from total to partial. However, here "[i]t was the Claimant's burden to establish ongoing disability *after* the date of reinstatement." Board Adjudication at 6. The Board concluded that the video supported the WCJ's decision to discredit the testimony of Claimant and his lay witnesses who asserted that Claimant's pain was disabling as of April 24, 2008. The opinion of Claimant's doctors, which was based upon Claimant's reports of pain, was likewise properly discredited. The Board concluded that the WCJ did not err as a matter of law in holding that Claimant failed to prove a disability as of April 24, 2008.

■ Claimant petitioned for this Court's review and raises two issues.[3] First, he argues that the Board erred because compensation benefits cannot be suspended on the basis of video surveillance. Second, he argues that the Board did not apply the correct burden of proof because once he established a disability, the burden shifted to Employer to prove that his continued loss of earnings was not caused by his work injury.

We begin with Claimant's challenge to the surveillance video. Employer notes that claimants often seek to discredit the significance of video surveillance by arguing that, by chance, the video was done on the claimant's "good day." Here, Claimant cannot make that argument. The video that showed Claimant stepping into the bed of his pickup truck without difficulty, walking without a limp or cane and twisting his body to change a tire was done on the same day that Claimant limped into the hearing, leaning on a cane, and testi-

fied that he could not walk up the steps to the second floor of his home. The WCJ held that the surveillance video defeated Claimant's petition for benefits after April 24, 2008, because it contradicted his evidence that his symptoms of pain were ongoing.

In *John B. Kelly Company, Inc., v. Workmen's Compensation Appeal Board (Davis)*, 8 Pa.Cmwlth. 589, 303 A.2d 255 (1973), an employer filed a petition to modify the claimant's benefits from total to partial. In support, the employer presented a surveillance video of the claimant. This Court held that surveillance videos were admissible for the purpose of establishing facts, but "inadequate to sustain [employer's] burden of showing a reduction of Claimant's disability from total to partial." *Id.* at 257. In *Rossi v. Workmen's Compensation Appeal Board (City of Hazleton)*, 164 Pa.Cmwlth.233, 642 A.2d 1153 (1994), this Court reviewed the significance of a video showing the claimant working as a mechanic when he alleged he was totally disabled from working at his pre-injury occupation as a firefighter. This Court explained that

when the burden is on a claimant to prove an injury in the course of employment, surveillance films are properly admitted for the purpose of impeaching the claimant's testimony and/or the claimant's evidence.

*Id.* at 1156. We further explained that surveillance evidence alone is not sufficient to satisfy a party's burden, but such evidence is admissible to help establish facts. *Id.* at 1157. In *Rossi*, we rejected the

---

**3.** Our scope of review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated or an error of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown)*, 830

A.2d 649, 653 n. 2 (Pa.Cmwlth.2003). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Mrs. Smith's Frozen Foods Company v. Workmen's Compensation Appeal Board (Clouser)*, 114 Pa.Cmwlth.382, 539 A.2d 11, 14 (1988).

claimant's argument that the employer had to prove with medical evidence that the claimant's disability had ceased, for the reason that the claimant had the burden of proof. We affirmed the award of partial disability benefits to the claimant.

■ In sum, where an employer files a petition to reduce a claimant's benefits from total to partial disability, the employer has the burden of proof. In that situation, a video is inadequate evidence standing alone. Rather, the video must be examined by a physician or vocational specialist who can offer evidence of what kind of jobs the claimant can do, other than his pre-injury job. Likewise, where the employer has filed a termination or suspension petition, a video will not be sufficient to satisfy the employer's burden of proof.

Here, Employer did not file a petition, as in *Kelly*. Rather, it was Claimant's reinstatement petition for "temporary total disability" that was at issue. Claimant attempted to meet his burden with expert and lay testimony, all of which was found incredible as of April 24, 2008. Claimant argues that this credibility determination is irrelevant. He proved a recurrence of a disability as of November 1, 2006, and Claimant argues that he did not have a burden to show that the disability persisted through the reinstatement proceeding. Rather, Claimant argues that it became

Employer's burden to prove when the disability ended.

■ When an injured worker files a claim petition, it is his burden to "demonstrate not only that he has sustained a compensable injury but also that the injury continues to cause disability throughout the pendency of the claim petition proceeding." *Somerset Welding and Steel v. Workmen's Compensation Appeal Board (Lee)*, 168 Pa.Cmwlth.78, 650 A.2d 114, 119 (1994). In a claim petition proceeding, the burden never shifts to employer to show that the disability has ceased or been reduced.

■ Where an injured worker petitions for reinstatement, he needs to establish that "his or her earning power is once again adversely affected by his or her disability, and that such disability is a continuation of that which arose from his or her original claim." *Bufford v. Workers' Compensation Appeal Board (North American Telecom)*, 606 Pa. 621, 637, 2 A.3d 548, 558 (2010). A reinstatement petition may be prompted by a number of circumstances. Here, Claimant asserted that his disability was caused by pain when he aggravated his 2005 injury while tying his shoe. In *Bufford*, the claimant sought a reimbursement of total disability when the employer ended his light duty job. Because every reinstatement is different, the claimant's burden of proof will be different.[4]

---

4. In *Bufford,* our Supreme Court addressed the claimant's burden in a reinstatement petition prompted when a claimant's light duty job ends. In that case:

> [T]he burden then shifts to the party opposing the reinstatement petition. In order to prevail, the opposing party must show that the claimant's loss in earnings is not caused by the disability arising from the work-related injury. *This burden may be met by showing that the claimant's loss of earnings is, in fact, caused by the claimant's bad faith rejection of available work* with in the rele-

vant required medical restrictions or by some circumstances barring receipt of benefits that is specifically described under provisions of [statutory law] or in this Court's decisional law.

*Id.* The issue in *Bufford* was whether the claimant had to prove that the loss of his job was without fault. The Supreme Court clarified that it was the employer's burden to prove fault. *Bufford* is inapposite to the question here, which is whether Claimant had to prove ongoing pain to have his reinstatement

Where a claimant seeks a reinstatement of benefits following a suspension, there remains a presumption that the work-related injury has not fully resolved. *Hinton v. Workers' Compensation Appeal Board (City of Philadelphia)*, 787 A.2d 453, 456 n. 7 (Pa.Cmwlth.2001). In a suspension, the claimant's work injury, although not fully resolved, does not adversely affect his ability to work. Thus, when petitioning for reinstatement the claimant "is not required to produce medical evidence on the cause of his disability." *City of Philadelphia v. Workers' Compensation Appeal Board (McGinn)*, 879 A.2d 838, 842 (Pa.Cmwlth.2005). However, the claimant must establish "that his earning power is once again adversely affected" and that "it is the same disability ... for which he initially received workmen's compensation benefits." *Riley Welding & Fabricating, Inc., v. Workmen's Compensation Appeal Board (DeGroft)*, 147 Pa. Cmwlth.448, 608 A.2d 598, 600 (1992) (emphasis omitted). The claimant may seek reinstatement of partial or total disability.

Here, Claimant sought "temporary total disability," and he proved that as of November 1, 2006, his back and leg pain rendered him unable to work. His medical evidence correlated that pain to his 2005 work injury. Such evidence was appropriate to support reinstatement. *Hinton*, 787 A.2d at 456. Claimant argues that once he met that burden, he was entitled to continued total disability unless and until Employer showed that his loss of earnings was not caused by his 2005 injury. We disagree.

■ The WCJ concluded that Claimant's testimony that he continued to suffer disabling pain as of April 24, 2008, was false. Because Claimant's medical experts relied on Claimant's reports of pain, their opinions were likewise discredited as of April 24, 2008. Surveillance testimony may be used to impeach credibility and to establish facts. *Rossi*, 642 A.2d at 1156. The WCJ is the ultimate finder of fact. *Steglik v. Workers' Compensation Appeal Board (Delta Gulf Corporation)*, 755 A.2d 69, 73 (Pa.Cmwlth.2000). Further, "the WCJ is entitled to accept or reject the testimony of any witness, including a medical witness, in whole or in part." *Id.*

On three separate occasions Claimant testified that pain affected his earning capacity. The WCJ evaluated this testimony and found some of it credible and some of it not. Accordingly, the WCJ found that Claimant's work injury affected his earning capacity up to April 24, 2008, but rejected Claimant's evidence that the injury continued to affect his earning power after that date.

■ Employer did not have a burden of proof in this reinstatement petition, unlike a reinstatement where the claimant's light duty job has ended, as in *Bufford*, 606 Pa. 621, 2 A.3d 548.[5] Where the employer has the burden of proof, as it did in *Kelly*, 303 A.2d 255, to prove that a claimant is entitled to partial, not total, disability, a video alone is not sufficient evidence. This is because films do not explain whether the claimant was " 'working faster or slower' " ... and do not " 'accurately measure his speed, energy and efficiency at work; they do not constitute an infallible measure of either disability or earning power.' " *Kelly*, 303 A.2d at 257 (quoting *De Battiste v. Anthony Laudadio and Son*, 167 Pa.Super. 38, 74 A.2d 784, 787 (1950)).

■ Here, the factual issue in the reinstatement petition was whether the Claim-

petition for temporary total disability be granted.

5. There is no case holding that an employer has the burden of proving the cessation of a disability in a reinstatement petition.

ant's loss of wages was caused by on-going pain. Given this issue, we agree with the Board that it was Claimant's burden to prove that the pain has persisted, not dissipated, through the pendency of the reinstatement proceeding. Indeed, Claimant offered evidence to prove a continuing disability. When that evidence was found to be false, Claimant argued that proof of disabling pain for a single day, November 1, 2006, shifted the burden to Employer to prove a cessation of pain. Claimant cites no precedent to support that broad proposition. The nature of the reinstatement and the issue raised therein determines the burden of proof. Here, Claimant's evidence did not prove a continuation of disabling pain through the pendency of the reinstatement petition.

For these reasons, the order of the Board is affirmed.

### ORDER

AND NOW, this 7th day of November, 2011, the order of the Workers' Compensation Appeal Board dated February 17, 2011, in the above referenced matter, is hereby AFFIRMED.