IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Odessa Brown,                                    :
                        Petitioner               :
                                                 :
            v.                                   :
                                                 :
Workers' Compensation                            :
Appeal Board (The School                         :
District of Philadelphia),                       :    No. 601 C.D. 2019
                        Respondent               :    Submitted: January 24, 2020


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                    FILED:  July 14, 2020


            Odessa Brown (Claimant) petitions for review of the April 24, 2019 opinion and order of the Workers' Compensation Appeal Board (Board) affirming the decision of the workers' compensation judge (WCJ) to grant petitions filed by the School District of Philadelphia (Employer) to suspend/modify Claimant's workers' compensation benefits (benefits), and, later, to terminate these benefits as of June 15, 2016.[1]  Upon review, we affirm.

            Claimant, a cleaner for Employer, sustained injuries at work on December 16, 2011 when she fell while cleaning steps.  WCJ's Decision and Order

---

[1] We note that Claimant does not challenge the Board's affirmance of the WCJ's decision to grant Employer's petition to suspend/modify her benefits.

at 3, Findings of Fact (F.F.) 1, 3(a) and 3(j), Reproduced Record (R.R.) at 115.[2] Employer accepted Claimant's injury as compensable with a description of "right knee, right wrist, right calf; contusion." F.F. 1. This description was later expanded to include "contusion to the right knee with osteochondral[3] injury and lateral meniscal[4] tear." F.F. 1

Claimant underwent arthroscopic surgery on her right knee in 2012 and a total knee replacement in 2015. F.F. 3(b). As of October 2016, Claimant was treating with Dr. Koenigsberg and Dr. Collier and attending physical therapy, but received no benefit from physical therapy or the surgeries. F.F. 3(c), 3(d) & 3(e). Claimant has fallen a few other times following her knee replacement surgery. F.F. 3(h). Claimant believes that her right knee pain worsened following the knee replacement, and that such pain is consistent and unbearable. F.F. 3(m).

On August 5, 2016, Employer submitted a petition to terminate Claimant's benefits as of June 15, 2016, contending that Claimant had attained full recovery. Petition to Terminate Benefits at 1, R.R. at 1. Claimant submitted an answer, asserting that she remained totally disabled as a result of her work injury. Answer at 1, R.R. at 4. During an initial hearing before the WCJ on August 29, 2016, Employer requested supersedeas and submitted surveillance video footage of

---

[2] We note that Claimant failed to paginate the reproduced record by adding a small "a" following each page number in accordance with Pennsylvania Rule of Appellate Procedure 2173.

[3] The term "osteochondral" means "relating to or composed of bone and cartilage." *Osteochondral*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/medical/osteochondral (last visited July 13, 2020).

[4] The term "meniscal" means "of or relating to a meniscus," which is defined as "a fibrous cartilage within a joint especially of the knee." *Meniscal*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/medical/meniscal (last visited July 13, 2020); *see also Meniscus*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/meniscus#medicalDictionary (last visited July 13, 2020).

Claimant in conjunction with this request. Transcript of Testimony (T.T.), 8/29/16 at 5, Certified Record (C.R.) at 71.[5] On February 3, 2017, Employer submitted a petition to modify or suspend Claimant's benefits in order to account for Claimant's post-injury wages.[6] Petition to Modify/Suspend Benefits at 1, R.R. at 6. This petition was assigned to the WCJ for disposition along with Employer's termination petition. Assignment Notice, 2/6/17, C.R. at 28. Claimant submitted an answer acknowledging receipt of post-injury wages, but nevertheless asserting a miscalculation occurred as to her average weekly wages. Answer at 1, R.R. at 10.

On May 1, 2017, the WCJ conducted a hearing with respect to Employer's petitions in which both Claimant and Employer participated. T.T., 5/1/17 at 1-2, C.R. at 75-76. Claimant testified that she was not capable of resuming her former position due to the condition of her knee, as she could not manage tasks such as walking up and down steps, pushing a cart and mopping. T.T., 5/1/17 at 11-12, C.R. at 85-86. Claimant indicated that she continues to have "consistent" and "crazy" knee pain all day long that is "just unbearable," and that she manages her pain with prescription medication. T.T., 5/1/17 at 12-13, C.R. at 86-87. However, Claimant admitted that she is only partially disabled, as she is still able to clean her house, and that she does not need to use a cane. T.T., 5/1/17 at 15-17, C.R. at 89-91.

On June 5, 2017, the WCJ held a further hearing with respect to Employer's petitions. T.T., 6/5/17 at 1, C.R. at 104. Claimant testified that she still

---

[5] We note that citations to the Certified Record reference the page numbers of the PDF document, as the Certified Record is not paginated.

[6] It appears from the record that Claimant operated a home daycare for her grandchildren immediately after her work injury, for which she received compensation, but that Claimant failed to report these wages to Employer. *See* F.F. 3(i); T.T., 5/1/17 at 10-11, C.R. at 84-85.

3

experienced swelling in her right knee, but that "[i]t comes and goes." T.T., 6/5/17 at 5, C.R. at 108. The WCJ observed both of Claimant's knees during the hearing and remarked that "[t]here's clear swelling to the . . . right side of the right leg." T.T., 6/5/17 at 6-7, C.R. at 109-10.

On January 3, 2018, the WCJ issued a decision and order granting Employer's petitions to suspend/modify Claimant's benefits as of December 16, 2011, and to terminate Claimant's benefits as of June 15, 2016.[7] WCJ's Decision & Order at 8, R.R. at 120. The WCJ rendered the following findings of fact based on his review of deposition testimony provided by Eugene Elia, M.D., a board-certified orthopedic surgeon, on behalf of Employer. F.F. 5 & 5(a); *see also* T.T., 11/30/16 at 1, R.R. at 12. Dr. Elia saw Claimant on two occasions—once on May 8, 2013 and again on June 15, 2016. F.F. (5)b. Claimant informed Dr. Elia that she sustained an injury at work on December 16, 2011 when she slipped and fell in a stairwell, injuring her right wrist and right knee. F.F. 5(c) & 5(t). On May 29, 2012, Claimant underwent a right knee arthroscopy, which she claimed provided no relief. F.F. 5(d).

As of May 2013, Dr. Elia did not believe Claimant had fully recovered from her work-related knee injury. F.F. 5(f). Claimant complained of difficulty standing for extended periods of time and walking for more than one hour. F.F. 5(e). However, Claimant's complaints regarding her wrist had completely resolved. F.F. 5(f). In June 2016, Dr. Elia learned from Claimant that she had undergone a right knee replacement on March 20, 2015, but that this surgery afforded her no relief and that she experienced continued swelling and pain whether standing, walking or at rest. F.F. 5(h), 5(i) & 5(j). Claimant still had no complaints regarding her wrist.

---

[7] The suspension/modification of Claimant's benefits dates back to December 16, 2011, the date of Claimant's work injury, and appears to have been based upon a stipulation of the parties that was not entered into the record. *See* F.F. 10.

4

F.F. 5(k). Claimant was not working at this time and did not report serving as caretaker for her grandchildren. F.F. 5(l). Dr. Elia's physical examination of Claimant's right knee revealed a small amount of effusion,[8] trace synovitis[9] and also some tenderness, though Claimant had no crepitus[10] and had good range of motion. F.F. 5(m) & 5(n). Trace synovitis and trace effusion are normal findings following a knee replacement and are not associated with pain. F.F. 5(q). Claimant's muscle strength was slightly diminished, but she displayed no atrophy and no instability was noted. F.F. 5(o). & 5(p). Examination of Claimant's right wrist produced no objective findings. F.F. 5(r).

Dr. Elia additionally reviewed notes provided by Andrew Collier, Jr., M.D., the board-certified orthopedic surgeon who performed Claimant's knee replacement surgery. F.F. 5(s); T.T., 11/30/16 at 12, R.R. at 12. These notes indicated that although Claimant continued to complain of pain, "[X]-rays showed a well seated prosthesis without any difficulty." F.F. 5(s). Relative to the 2011 work injury, Dr. Elia diagnosed Claimant with a resolved right wrist contusion, a resolved right calf contusion and a right knee contusion including an osteochondral injury and

---

[8] Dr. Elia testified that effusion "is known as water on the knee, or synovitis." T.T., 11/30/16 at 10, C.R. at 246. The term "synovitis" is defined as inflammation of a synovial membrane, which is the connective-tissue membrane that secretes synovial fluid and lines ligamentous surfaces of joint capsules, tendon sheaths where free movement is necessary and bursae. *Synovitis*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/synovitis (last visited July 13, 2020); *Synovial membrane*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/medical/synovial%20membrane (last visited July 13, 2020).

[9] *See supra* note 8.

[10] The term "crepitus" is defined as "a crackling sound or grating feeling produced by bone rubbing on bone or roughened cartilage, detected on movement of an arthritic joint." *Crepitus*, OXFORD REFERENCE, https://www.oxfordreference.com/view/10.1093/oi/authority.20110803095647308 (last visited July 13, 2020).

torn meniscus with a failed arthroscopic surgery necessitating a right knee replacement. F.F. 5(t). Following his examination of Claimant, Dr. Elia initially thought Claimant continued to have difficulty with her right knee and would probably not improve. F.F. 5(u). However, Dr. Elia based this opinion solely on Claimant's subjective complaints and, "[o]bjectively[,] . . . Claimant was doing really well with regard to her knee." F.F. 5(v) & 5(x). Claimant did not require any further treatment related to her work injuries. F.F. 5(w). After drafting his 2016 report, Dr. Elia received additional records, including updated notes from Dr. Collier indicating his opinion that Claimant's right knee "was doing pretty well," displaying no synovitis or effusion, and that Claimant exhibited good range of motion and a nonantalgic gait.[11] F.F. 5(y). & 5(z). Dr. Collier's August 2016 note indicated that Claimant's X-rays "looked good" with no signs of loosening. F.F. 5(aa).

Dr. Elia also reviewed surveillance video footage of Claimant captured on May 27, 2016, June 9, 2016 and June 15, 2016, which showed Claimant getting in and out of her SUV without difficulty, driving, going up and down steps without difficulty and walking normally with no limp. F.F. 5(bb) & 5(cc). Dr. Elia noted that Claimant's actions in the surveillance video footage were in marked contrast to how she presented during the examination, thereby indicating symptom magnification on Claimant's part. F.F. 5(dd) & 5(ee). This surveillance footage, coupled with Dr. Elia's extensive experience with knee replacement surgery from which he could "absolutely say 100 [%] of . . . patients get some kind of relief," led Dr. Elia to modify his prior opinion to full recovery with the ability to return to work without restrictions. T.T., 11/30/16 at 24, R.R. at 18; F.F. 5(ee) & 5(ff). Dr. Elia

---

[11] The term "antalgic" is defined as "marked by or being an unnatural position or movement assumed by someone to minimize or alleviate pain or discomfort (as in the leg or back)." *Antalgic*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/medical/antalgic (last visited July 13, 2020).

therefore opined that Claimant's issues with her right knee have completely resolved. F.F. 5(hh).

The WCJ rendered the following findings of fact based on his review of deposition testimony provided by Dr. Collier on behalf of Claimant. F.F. 4 & 4(a); *see also* T.T., 3/27/17 at 1, R.R. at 40. Dr. Collier first treated Claimant on October 17, 2013, at which point her chief complaint was her right knee. F.F. 4(b). Claimant related to Dr. Collier how she injured her knee at work on December 16, 2011 when she slipped and fell on some stairs. F.F. 4(c). Claimant had arthroscopic surgery on her right knee on May 29, 2012. F.F. 4(d) & 5(d). Despite initially attempting to pursue conservative treatment, Dr. Collier eventually performed a total right knee replacement on Claimant on March 20, 2015. F.F. 4(e); T.T., 11/30/16 at 12, C.R. at 248. Dr. Collier next saw Claimant on August 18, 2016, at which point he did not consider Claimant fully recovered, as she "still had symptoms and could not do certain things." F.F. 4(f) & 4(g). Dr. Collier also viewed the same surveillance video footage showing Claimant moving around without a limp or any other difficulty. F.F. 4(h) & 4(j). However, the videos did not change Dr. Collier's opinion that Claimant had not yet fully recovered and that she could not return to work in her pre-injury position. F.F. 4(i) & 4(k). Dr. Collier further opined that Claimant could continue to care for her grandchildren, notwithstanding the fact that she had not fully recovered. F.F. 4(l); T.T., 3/27/17 at 15, C.R. at 128.

As of January 24, 2017, Claimant had a good range of motion and a normal gait. F.F. 4(m). Dr. Collier saw Claimant only sporadically after her surgery and not as frequently as he would have liked, including an eight-month span in which he did not see Claimant at all. F.F. 4(n). A bone scan indicated that Claimant's prosthesis in her knee was not loose and the scan was otherwise normal. F.F 4(p).

7

Claimant's right leg muscles exhibited no atrophy, thereby indicating she was engaging in some activity. F.F. 4(r). Dr. Collier could adduce no physiological explanation for Claimant's ongoing complaints of right knee pain. F.F. 4(s). Dr. Collier believed Claimant had improved after her knee replacement, despite what she told Dr. Elia, as patients who receive total knee replacements usually suffer some pain, but not to the degree complained of by Claimant. F.F. 4(t). & 4(u).

The WCJ deemed the testimony of Dr. Elia credible and persuasive, due to the doctor's extensive review of the records, thorough physical examinations of Claimant and years of experience as an orthopedic surgeon treating injuries such as those suffered by Claimant. F.F. 6. The WCJ further determined that surveillance video footage established that Claimant is able to function normally. *Id.* Moreover, the WCJ noted that Dr. Elia's examination of Claimant did not produce any objective findings and that he could provide no explanation for Claimant's ongoing subjective complaints. *Id.* In contrast, the WCJ found the testimony of Dr. Collier to be neither credible nor persuasive. F.F. 7. The WCJ noted there was no objective medical basis for Dr. Collier's belief that Claimant was not fully recovered. *Id.* The WCJ highlighted Dr. Collier's admission that he could not identify a physiological cause for Claimant's ongoing subjective complaints. *Id.* The WCJ further noted that Claimant's subjective complaints were out of proportion for someone who had undergone a total knee replacement. *Id.*

The WCJ determined that Claimant's testimony was neither credible nor persuasive, noting that her testimony was not supported by the medical evidence. F.F. 8. Further, the WCJ concluded that "[C]laimant's statement that she obtained no relief at all from her symptoms after undergoing the total knee replacement was incredible as both experts in this matter testified that every patient who has a total

8

knee replacement will at least have some relief of symptoms." *Id.* The WCJ also stated that his observations of Claimant when she testified before him in court contributed to his finding of a lack of credibility. F.F. 9. The WCJ therefore found that Employer is entitled to a suspension/modification of Claimant's temporary total disability benefits as of December 16, 2011, per the terms of the prior stipulation of the parties,[12] and that the carrier must be reimbursed the $13,871.64 it overpaid to Claimant due to Claimant's failure to provide her wage records in violation of the stipulation. F.F. 10. The WCJ further found, "upon review of the evidence in full, that [Claimant] . . . had fully recovered from the accepted work injury by June 15, 2016." F.F. 11. Finally, the WCJ determined that Employer presented a reasonable contest. F.F .12.

Claimant appealed to the Board, arguing that the WCJ failed to render a reasoned decision in accordance with Section 422(a) of the Workers' Compensation Act (Act),[13] 77 P.S. § 834. Claimant's Appeal at 1, R.R. at 121. On April 24, 2019, the Board issued an opinion and order affirming the decision of the WCJ. Board's Opinion & Order at 6, R.R. at 148. The Board determined that Claimant failed to establish that the WCJ did not issue a reasoned decision, disagreeing with her contention that the WCJ failed to sufficiently explain his reasons for crediting Dr. Elia over Dr. Collier in concluding that Claimant fully recovered from her work injuries. Board's Opinion & Order at 2, R.R. at 144. The Board indicated that Section 422(a) of the Act requires only that the WCJ provide

---

[12] The parties previously stipulated that Claimant had recovered her earning capacity immediately after her work injury, presumably as noted above through her operation of a home daycare for her grandchildren for which she received compensation. *See* F.F. 3(i); T.T., 5/1/17 at 10-11, C.R. at 84-85; Board's Opinion & Order at 1, R.R. at 143.

[13] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

9

an objective basis for crediting the deposition testimony of one medical expert over another, and that it does not authorize the Board to make its own independent finding as to whether the WCJ's credibility determinations are correct. Board's Opinion & Order at 4, R.R. at 146 (citing *Lehigh Cty. Vo-Tech Sch. v. Workmen's Comp. Appeal Bd. (Wolfe)*, 652 A.2d 797 (Pa. 1995)). Further, noting that determinations regarding credibility and weight to be accorded evidence are the prerogative of the WCJ, the Board "determine[d] that the WCJ provided sufficient bases for crediting Dr. Elia over Dr. Collier to meet the reasoned decision requirements of the Act" and that the WCJ's credibility determinations were neither arbitrary nor capricious. Board's Opinion & Order at 4-5, R.R. at 146-47.

Specifically, the Board highlighted that the WCJ based his credibility determination on Dr. Elia's extensive records review, thorough physical examinations of Claimant, years of experience as an orthopedic surgeon treating injuries similar to those suffered by Claimant, and failure to find an objective explanation for Claimant's ongoing subjective complaints. Board's Opinion & Order at 5, R.R. at 147. Further, the Board noted that although surveillance videos alone cannot sustain a party's burden of proof, credible surveillance evidence may assist a party in meeting its burden where, as here, Claimant's testimony was impeached and medical evidence supported a full recovery. *Id.* The Board also pointed out that the WCJ's observation that Claimant's right knee appeared swollen during the final hearing "does not negate the WCJ's credibility determinations with respect to the medical experts." *Id.*

Before this Court,[14] Claimant argues that the WCJ erroneously credited the expert medical testimony provided by Dr. Elia and, therefore, failed to issue a

---

[14] "This Court's review in workers' compensation appeals is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law

10

reasoned decision pursuant to Section 422(a) of the Act. *See* Claimant's Brief at 11-12. Claimant contends that the reasons provided by the WCJ in crediting the deposition testimony of Dr. Elia cannot provide the basis of a reasoned decision. *Id.* at 12. Further, Claimant asserts that Dr. Elia's "last medical report found her disabled, stating objective signs and subjective symptoms," and that his thorough physical examinations of Claimant indicated she had not fully recovered. *Id.* (citing Dr. Elia's Letter, 6/5/16 at 5, R.R. at 35). Claimant contends that "[Dr. Elia's] years of practice in his profession treating injuries of the kind suffered by [C]laimant were a sham." *Id*. Claimant also contends that "[o]nce [Dr.] Elia [saw] the innocuous videotape of [C]laimant, all of a sudden [C]laimant is no longer having symptoms, no longer having objective findings, no longer having attained maximum medical improvement and her prognosis for full recovery goes from 'poor' to 'cured.'" *Id.*

This Court has observed that "there is no requirement in the law that the WCJ's decision be 'well-reasoned' in the sense that a reviewing court agrees with the reasoning offered; the requirement is that the decision be 'reasoned' within the meaning of Section 422(a) of the Act." *Green v. Workers' Comp. Appeal Bd. (US Airways)*, 28 A.3d 936, 940 (Pa. Cmwlth. 2011). Section 422(a) of the Act provides in relevant part:

> All parties to an adjudicatory proceeding are entitled to a *reasoned decision* containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The [WCJ] shall specify the evidence upon which the [WCJ] relies and state

---

was committed, or whether constitutional rights were violated." *Whitfield v. Workers' Comp. Appeal Bd. (Tenet Health Sys. Hahnemann LLC)*, 188 A.3d 599, 605 n.6 (Pa. Cmwlth. 2018); *see also* Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the [WCJ] must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834 (emphasis added). "[A] decision is 'reasoned' for purposes of Section 422(a) if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards. A reasoned decision is no more, and no less." *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). "[T]he purpose of a reasoned decision is to spare the reviewing court from having to imagine why the WCJ believed one witness over another." *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 196 (Pa. Cmwlth. 2006).

In *Daniels*, our Supreme Court distinguished between judicial review of credibility determinations based upon deposition testimony submitted to the WCJ as opposed to a WCJ's evaluation of live testimony. *Daniels*, 828 A.2d at 1052-53. Regarding review of a WCJ's consideration of deposition testimony, the Court noted that "absent the circumstance where a credibility assessment may be said to have been tied to the inherently subjective circumstance of witness demeanor, some articulation of the actual objective basis for the credibility determination must be offered for the decision to be a 'reasoned' one which facilitates effective appellate review." *Id.* at 1053. Nevertheless, we have held previously:

[E]ven where a WCJ has based a credibility determination on a cold record, substantial deference is due. We must view the reasoning as a whole and overturn the credibility determination only if it is arbitrary and capricious or so

12

fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational.

*Casne v. Workers' Comp. Appeal Bd. (STAT Couriers, Inc., and State Workers' Ins. Fund)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008). "Determining the credibility of the witnesses is the quintessential function of the fact finder. . . . It is not an exact science, and the ultimate conclusion comprises far more than a tally sheet of its various components." *Dorsey*, 893 A.2d at 195-96 ("declin[ing] [the c]laimant's invitation to dissect and analyze each of the WCJ's reasons for his credibility determination"). "[T]he WCJ is entitled to accept or reject the testimony of any witness, including a medical witness, in whole or in part." *Soja v. Workers' Comp. Appeal Bd. (Hillis-Carnes Eng'g Assocs.)*, 33 A.3d 702, 708 (Pa. Cmwlth. 2011).

Claimant asserts that the explanation supplied by the WCJ in crediting the deposition testimony of Dr. Elia fails to provide the basis of a reasoned decision pursuant to Section 422(a) of the Act. Claimant's Brief at 12. We disagree. As noted above, where a WCJ reviews a deposition transcript of expert medical testimony, the WCJ must articulate an actual objective basis in support of any corresponding credibility determination in order to permit effective appellate review. *Gumm v. Workers' Comp. Appeal Bd. (Steel)*, 942 A.2d 222, 228 (Pa. Cmwlth. 2008). "Although there are countless objective factors that may support a credibility determination, these factors must be identified and enunciated." *Id.* Nevertheless, "Section 422(a) [of the Act] does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations." *Id.* Further, the "reasoned decision [standard] does not require the WCJ to give a line-by-line analysis of each statement by each witness, explaining how a particular statement affected the ultimate

13

decision." *Id.* Thus, "[u]nless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal." *Id.*

Here, the objective basis for the WCJ's credibility determination is supported by the record. The WCJ deemed the testimony of Dr. Elia credible and persuasive due to the doctor's extensive records review, thorough physical examinations of Claimant and years of experience as an orthopedic surgeon treating injuries such as those suffered by Claimant. F.F. 6. Further, the WCJ noted that Dr. Elia's examination of Claimant did not produce any objective findings or explanation for Claimant's subjective complaints. *Id. See Gumm*, 942 A.2d at 228 (concluding that the WCJ provided an objective basis in support of his credibility determination based on review of deposition testimony where his "reason [was] confirmed in a review of the medical testimony and in a review of the accepted testimony of [the c]laimant"); *Dorsey*, 893 A.2d at 196 (holding that the WCJ provided actual objective bases in support of his credibility determination where he explained that claimant's physician did not review as many records as did employer's physician and that claimant's physician advised he would need knee replacement surgery in the future, where these reasons "permit[ted] verification during appellate review" and each "alone [was] sufficient to support a credibility finding").

In particular, the WCJ's explanation that Dr. Elia's examination of Claimant did not reveal objective findings in support of her subjective complaints is supported by Dr. Elia's testimony that Claimant experienced normal amounts of effusion and synovitis following her knee replacement surgery that were not associated with pain and exhibited good range of motion, a nonantalgic gait and no atrophy or instability. *See* F.F. 5(m), 5(n), 5(o), 5(p), 5(r), 5(q), 5(y) & 5(z). Dr.

14

Elia further testified that he could "absolutely say 100 [%] of . . . patients get some kind of relief with the knee replacement surgery," and that, despite Claimant's subjective complaints, he "[a]ctually . . . thought she was doing pretty well objectively by [his] examination of her knee." T.T., 11/30/16 at 17 & 24, C.R. at 253 & 260; F.F. 5(gg). Even Dr. Collier could adduce no physiological explanation for Claimant's ongoing complaints of right knee pain and noted that Claimant's X-rays revealed a well-seated prosthesis. F.F. 5(s). Further, Dr. Collier testified that he was "kind of at a loss as to why [Claimant was] having pain still," that he "[could not] explain it," and that after total knee replacement surgery "you may have some [pain], but usually not to this degree." T.T., 3/27/17 at 37-38 & 40, C.R. at 150-51 & 153. Thus, we agree with the Board that the WCJ provided sufficient bases for crediting the deposition testimony of Dr. Elia.

Claimant further challenges the WCJ's credibility determination on the basis that Dr. Elia was improperly influenced by the surveillance video footage in opining that Claimant was no longer disabled. *See* Claimant's Brief at 12. We acknowledge that "films alone are inadequate to sustain the evidentiary burden of showing that a claimant's disability has been reduced." *Hartzell v. Workmen's Comp. Appeal Bd. (Bowen McLaughlin, York Div.)*, 515 A.2d 1009, 1011 (Pa. Cmwlth. 1986); *see also Soja*, 33 A.3d at 706 & 708 (noting, where an employer files a petition to terminate a claimant's benefits, that "a video is inadequate evidence standing alone" to satisfy employer's burden of proof and "must be examined by a physician or vocational specialist who can offer evidence of what kind of jobs the claimant can do, other than his pre-injury job"). However, "[s]urveillance testimony may be used to impeach credibility and to establish facts." *Soja*, 33 A.3d at 708 (affirming the denial of claimant's claim petition for benefits where surveillance

video "contradicted . . . evidence that his symptoms of pain were ongoing"); *Hartzell*, 515 A.2d at 1010-11 (holding, where an expert medical witness first opined that claimant's disability continued following a physical examination of claimant but then changed his diagnosis after viewing a surveillance videotape, that the altered opinion nevertheless constituted substantial competent evidence as "the videotape corroborated the inconsistencies which the physical examination revealed").

Here, in explaining his decision to credit the testimony of Dr. Elia, the WCJ noted that "the video surveillance of [] Claimant establishes she is able to function normally." F.F. 6. Dr. Elia testified that he reviewed the surveillance videos, including footage revealing that on June 15, 2016, Claimant was walking down the street with a normal gait and exhibited no trace of a limp or difficulty standing or crossing the street. T.T., 11/30/16 at 23, C.R. at 259. Dr. Elia stated that the surveillance video footage did not correspond with Claimant's presentation during her appointment later that same day, and that his review of these videos changed his opinion as noted in the June 15, 2016 independent medical examination report. *Id.* Further, Dr. Elia testified that the surveillance video footage "suggested a strong case [for] symptom magnification, which [he] felt had occurred in [his] examination on June 15th, and because of seeing this contrast, [he] modified [his] results to the fact that she had completely recovered from all her injuries and could return back to her previous position without restrictions." T.T., 11/30/16 at 24, C.R. at 260. Thus, the WCJ properly utilized the surveillance video footage to impeach Claimant's credibility and, thereby, to provide a basis for his decision to credit the deposition testimony of Dr. Elia. *See Soja*, 33 A.3d at 708. We therefore agree with the Board that the WCJ provided objective bases for his decision to credit the

16

testimony of Dr. Elia, thereby rendering his decision "reasoned" for purposes of Section 422(a) of the Act.[15]

Claimant next asserts that the WCJ and the Board "capriciously disregarded the effect of [C]laimant's objective evidence of continuing disability which the [WCJ] himself declared." Claimant's Brief at 15. Claimant notes that at the final hearing on June 5, 2017, she showed both her knees to the WCJ, who read into the record that "there's clearly swelling to the anterior aspect and primarily to the right lateral side[.]" *Id.* Claimant maintains that the WCJ's observation precludes a finding of full recovery. We disagree.

The WCJ's mere observation of swelling in Claimant's right knee does not establish a lack of full recovery or that Claimant is incapable of performing her pre-injury job. Moreover, the law is well-settled that "[t]he WCJ is the ultimate finder of fact and the exclusive arbiter of credibility and evidentiary weight." *Daniels*, 828 A.2d at 1052; *see also 1912 Hoover House Rest. v. Workers' Comp. Appeal Bd. (Soverns)*, 103 A.3d 441, 446 (Pa. Cmwlth. 2014) (stating that "the WCJ, as fact finder, has exclusive province over questions of credibility and a reviewing court is not to reweigh the evidence or review the credibility of witnesses"). Here, the WCJ stated that he "observed [Claimant's] demeanor when she testified before [him] in court," and that "[t]hese observations contribute[d] to [his] finding of a lack

---

[15] Claimant also asserts that Dr. Elia's "last medical report found her disabled, stating objective signs and subjective symptoms," and that his thorough physical examinations of Claimant indicated she had not fully recovered. Claimant's Brief at 12 (citing Dr. Elia's Letter, 6/5/16 at 5, R.R. at 35). However, Claimant's summation of Dr. Elia's opinion based on his June 15, 2016 letter is misleading. In an addendum letter dated July 27, 2016, Dr. Elia stated that after reviewing the surveillance video footage of Claimant, his "conclusion should be updated from [his] previous assessment of maximum medical improvement and light duty work" to reflect that Claimant's "workplace injuries [have] completely resolved and no further treatment is indicated," such that Claimant "could return back to her full time position as a maintenance employee for [Employer]." Dr. Elia's Addendum Letter, 7/27/16 at 1, R.R. at 37.

of credibility" with respect to her testimony. F.F. 9. *See also Daniels*, 828 A.2d at 1052-53 (holding that "in a case where the fact-finder has had the advantage of seeing the witnesses testify and assessing their demeanor, a mere conclusion as to which witness was deemed credible, in the absence of some special circumstance, could be sufficient to render the decision adequately 'reasoned,'" as "[s]uch a credibility determination may involve nothing more than the fact-finder's on-the-spot, and oftentimes instinctive, determination that one witness is more credible than another").

Moreover, the WCJ specifically credited the testimony of Dr. Elia that Claimant had fully recovered and, as discussed above, provided objective bases for his decision to credit the same. Claimant fails to establish that the WCJ arbitrarily or capriciously disregarded any evidence, including the testimony and opinion of Dr. Collier that Claimant is not fully recovered. We agree with the Board "that the WCJ's observation that Claimant's right knee appeared swollen during the final hearing does not negate the WCJ's credibility determinations with respect to the medical experts." Board's Opinion & Order at 5, R.R. at 147. The credible testimony of Dr. Elia supports a finding of Claimant's full recovery.[16]

Accordingly, we affirm.

 

_____
CHRISTINE FIZZANO CANNON, Judge

---

[16] Claimant also asserts that the WCJ committed an error of law in concluding that Employer satisfied its burden of proof to terminate Claimant's benefits, because Employer failed to provide unequivocal medical testimony establishing Claimant's full recovery in support of its termination petition, all medical documentation reviewed by Dr. Elia evidences her continuing disability and the surveillance video footage does not satisfy Employer's burden of proof. Claimant's Brief at 13-14. We note, however, that we need not address this argument, as Dr. Elia credibly opined that Claimant's issues with her right knee had completely resolved. *See* F.F. 5(hh) & 6.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Odessa Brown,                                    :
                        Petitioner               :
                                                 :
            v.                                   :
                                                 :
Workers' Compensation                            :
Appeal Board (The School                         :
District of Philadelphia),                       :     No. 601 C.D. 2019
                        Respondent               :

# O R D E R

AND NOW, this 14th day of July, 2020, the April 24, 2019 order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge