IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Angela Nichols,                          :
                                         :
                    Petitioner           :
                                         :
          v.                             :   No. 777 C.D. 2020
                                         :   Submitted: February 19, 2021
Workers' Compensation Appeal             :
Board (School District of                :
Philadelphia),                           :
                                         :
                    Respondent           :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED: February 9, 2022


          Angela Nichols (Claimant), *pro se*, petitions for review of an order of
the Workers' Compensation Appeal Board (Board), which affirmed a decision of a
Workers' Compensation Judge (WCJ) denying her Claim Petition filed against the
School District of Philadelphia (Employer) because she did not meet her burden of
proving that she sustained a disabling work-related injury. On appeal, Claimant
contends that she did meet her burden of proof, and that Employer's medical expert
was not qualified to render an opinion regarding her injuries. For the following
reasons, we affirm the Board's order.

On December 6, 2017, Claimant filed a Claim Petition, seeking compensation under the Workers' Compensation Act (Act),[1] and asserting that she sustained injuries to her lower back, upper back, neck, and right leg on September 25, 2017, while she was working for Employer as a special education classroom assistant, earning $372.00 per week. Certified Record (C.R.) Item No. 2, at 2-3.[2] She claimed that her injuries were caused by "REPETITIVE JOB ACTIVITIES INCLUDING LIFTING, BENDING, [and] TRANSFERRING OF STUDENTS." *Id.* at 2. Claimant sought total disability benefits from September 25, 2017, and ongoing. *Id.* at 4. Employer filed an Answer to the Claim Petition, denying all material allegations, and the matter was assigned to a WCJ for disposition. C.R. Item Nos. 3-4.

Claimant testified at two hearings held before the WCJ on January 3, 2018, and November 19, 2018. C.R. Item Nos. 10, 12. At the first hearing, Claimant testified that she began working for Employer on September 15, 2016.[3] C.R. Item No. 10, 1/3/2018 Hearing Transcript (Hr'g Tr.) at 4-5. She explained that her duties as a classroom assistant for special needs students, who are physically and mentally handicapped, primarily involved "help[ing] with their personal care needs[.]" *Id.* at 5. For example, she assisted the students in the bathroom, pushed their wheelchairs, changed their clothes, and helped them eat. *Id.* at 5-6. Claimant explained that many of the students had limited mobility, so she had to manually lift and turn them. She

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041; 2501-2710.

[2] On August 27, 2020, this Court granted Claimant leave to proceed *in forma pauperis*. Claimant elected not to file a reproduced record. *See* Pa. R.A.P. 2151(b) ("If leave to proceed in forma pauperis has been granted to a party, such party shall not be required to reproduce the record.").

[3] Claimant was represented by counsel before the WCJ and the Board.

2

estimated the students' average weight to be 75 pounds.  *Id.* at 7.  Claimant further stated that she had to stand and walk most of the day.  *Id.* at 6.

Claimant testified that she developed pain in her back beginning in March of 2017.  1/3/2018 Hr'g Tr. at 10.  She explained that it became difficult for her to bend, lift the students, and push the students in wheelchairs.  *Id.* at 10.  Over time, her pain worsened, and on one occasion near the end of March of 2017, she took three days off of work due to the pain.  *Id.* at 10, 21.  However, she managed to work through June of 2017, when the school year ended and she had the summer off.  *Id.* at 10-11.

Claimant testified that she returned to work on August 28, 2017, for the new school year, but she continued to have pain while performing her job duties and also "noticed that the symptoms were getting worse and that the job was getting more difficult to perform."  1/3/2018 Hr'g Tr. at 11-12.  Then, on September 25, 2017, Claimant explained that while she was lifting a student from a wheelchair to a bed, she experienced severe pain in her lower back, as well as in her legs and feet.  *Id.* at 12-13.  Claimant stated that she nevertheless completed her workday, but again experienced extreme pain later that evening.  *Id.* at 13.  She claimed that her lifting of the student impacted her back, neck, legs, feet, and hands.  *Id.*

Within two days of the incident, Claimant stated that she contacted Kathy Leonard, an administrator in the special education department, via telephone to notify her of Claimant's symptoms.  1/3/2018 Hr'g Tr. at 14.  Leonard referred Claimant to Worknet for medical treatment, and Worknet referred her to Michelle Hirsch, M.D., Claimant's family doctor.  *Id.* at 14-15.  Dr. Hirsch then referred Claimant to an orthopedist, whom she saw twice.  *Id.* at 15-16.  The orthopedist told Claimant that she could return to work but could not lift anything over 25 pounds.

3

*Id.* at 27.  Claimant stated that she then attended 11 physical therapy sessions, but her pain continued.  *Id.* at 16.  Claimant also testified that, at the time of the hearing, she was treating with Jason Lazaroff, D.C., and attending physical therapy three days a week.  *Id.* at 17.

Claimant further testified that she was first treated for back and neck pain about five years ago, due to a car accident.  *Id.* at 17-18.  She stated, however, that she recovered from that accident and did not have any back or neck issues at the time she began working for Employer.  *Id.* at 18.  Claimant testified that she has not returned to work for Employer, or anywhere else, since September 25, 2017.  *Id.* at 16-17.

Claimant testified before the WCJ a second time on November 19, 2018.  C.R. Item No. 12, 11/19/2018 Hr'g Tr. at 1.  Since her prior testimony, she was evaluated by Matthew J. Tormenti, M.D., a neurosurgeon at Princeton Brain, Spine & Sports Medicine.  *Id.* at 7-8.  Dr. Tormenti referred Claimant to one of his colleagues, Mark McLaughlin, M.D., also a neurosurgeon, who recommended surgery due to the severe condition discovered on a cervical magnetic resonance imaging (MRI) scan of Claimant.  *Id.* at 8-9.  Claimant, however, could not get the surgery because Dr. McLaughlin's practice does not accept her medical insurance. *Id.* at 9.  Additionally, Claimant stated that she treats at ProHealth, where she receives physical therapy, chiropractic services, acupuncture, and massage, which provides temporary relief.  *Id.* at 11-12.

Claimant stated that she has severe, continuous pain, which worsens with physical activity.  11/19/2018 Hr'g Tr. at 13-14.  If she stands for a long period of time or walks more than three blocks, it is very painful; she feels a burn from her low back to her feet.  *Id.* at 14-15.  It takes her two to three hours to shower and dress

4

due to the pain, and household cleaning takes all day because she needs to take many breaks. *Id.* at 15. Claimant testified that she cannot return to work because she cannot lift students, push wheelchairs, or stand for long periods of time. *Id.* at 16.

On cross-examination, Claimant was asked about her prior consultations with Dr. Hirsch. Claimant admitted to telling Dr. Hirsch on September 21, 2017, that she "had a history of chronic mid and low back pain beginning around 2000 after a motor vehicle accident[]" and that the pain "had been worsening over the past few months with no new injury." 11/19/2018 Hr'g Tr. at 19. Claimant also reported to Dr. Hirsch that she had numbness in her feet and swelling in her legs. *Id.* at 19-20. Additionally, in December of 2017, Claimant informed staff at ProHealth that she had prior back pain as a result of the motor vehicle accident. *Id.* at 20.

In support of her Claim Petition, Claimant presented the August 1, 2018 deposition testimony of Dr. Tormenti, who first treated Claimant on January 9, 2018. C.R. Item No. 15, at 7. At that time, Claimant reported a prior motor vehicle accident that caused back pain but claimed that she had been asymptomatic until the work injury of September 25, 2017, which caused back pain with radiation into her legs and arms. *Id.* at 7-8.

Dr. Tormenti examined Claimant's medical records, including two MRI scans. He opined that Claimant "had a Type 1 Chiari malformation with a syrinx or a big fluid-filled cavity in the middle of her spinal cord that was expanding out of her spinal cord." C.R. Item No. 15, at 16. He explained that "[a] Chiari malformation is when the cerebellum or the back part of the brain actually herniates out through the bottom of the skull and into the spinal canal." *Id.* Dr. Tormenti further explained that Claimant's malformation was cutting off some of her spinal

5

fluid flow, and was causing a syrinx in the middle of her spinal cord. *Id.* at 17. Dr. Tormenti stated that this condition can cause pain, numbness, and tingling. *Id.*

Dr. Tormenti stated that no one knows the exact cause of a Chiari malformation; some people are born with it, and it has been seen in children. C.R. Item No. 15, at 17. Other people can develop it later in life. *Id.* Dr. Tormenti explained that it is not a condition that he regularly treats. *Id.* However, he has treated it in the past and understands the surgery, but the surgery required is relatively involved. *Id.* He stated that his partner, Dr. McLaughlin, has more expertise with the condition and surgery. *Id.* at 17-18. Dr. Tormenti thus recommended Claimant to Dr. McLaughlin, who examined her and recommended surgery. *Id.* at 17-18, 20-21.

When asked for his opinion in the case based on his review of the history that he obtained from Claimant, his examinations of Claimant, and Claimant's other medical records and the diagnostic studies reviewed, Dr. Tormenti opined that Claimant sustained a sprain and strain to her neck and low back on September 25, 2017, and had disc bulging in her lumbar spine and cervical spine, and the Chiari malformation. C.R. Item No. 15, at 24-25. Dr. Tormenti further opined that Claimant's Chiari malformation probably predated her work injury, "but that she was asymptomatic until th[e work] event . . . [and] the [work] event did lead to it acutely becoming a problem." *Id.* at 25. Therefore, Claimant's condition was work related. *Id.* Dr. Tormenti also noted that because Claimant became symptomatic as a result of the September 25, 2017 work event, surgical treatment is necessary to correct the Chiari malformation, which "can be made significantly worse by exertion, . . . even heavy coughing"; thus, he opined that Claimant's

6

injuries have rendered her unable to perform her job since September 25, 2017, or any physical job. *Id.* at 25-27.

Dr. Tormenti noted that Claimant's cervical MRI also showed some degeneration and disc bulging, which may contribute to the pain in her neck. C.R. Item No. 15, at 15, 18. However, he did not focus on it because the Chiari malformation was his primary concern. *Id.* at 18. Dr. Tormenti explained that the Chiari malformation needs to be addressed because it can cause progressive neurologic problems that may become irreversible if not treated. *Id.* at 18-19.

Employer presented the October 10, 2018 deposition testimony of John Nolan, M.D., who is an orthopedic surgeon.[4] C.R. Item No. 19. Dr. Nolan conducted an independent medical examination (IME) of Claimant on February 28, 2018. *Id.* at 8. He reviewed Claimant's medical records, but not her MRIs, and she recounted her medical history. *Id.* Based on his examination, Dr. Nolan determined that Claimant had no objective signs of impairment. *Id.* at 13. To the degree she sustained any injury on September 25, 2017, however, he concluded that it was a strain of her cervical or lumbar spine, from which she had fully recovered. *Id.*

Several months after the IME, Dr. Nolan had the opportunity to review additional medical records, including Claimant's x-rays and MRIs, based on which he determined that Claimant had changes to her lumbar and cervical spine, which were degenerative and not work related. C.R. Item No. 19, at 14-15. He observed that Claimant's October 30, 2017 MRI did show fluid inside her spinal cord, *i.e.*, the syrinx. *Id.* at 15. Dr. Nolan did not believe that the syrinx was work related, however, because "[s]ome people feel that [it] can be caused by trauma," and there

---

[4] During his deposition, Dr. Tormenti was asked whether orthopedic surgeons are qualified to treat a Chiari malformation, to which he responded that only neurosurgeons are so qualified. C.R. Item No. 15, at 27.

was no work-related neck injury reported here, and because it generally would take a fair amount of time to develop. *Id.* at 17. Dr. Nolan stated that he was familiar with Chiari malformation, but he does not treat it and is "not an expert in it"; if he had a patient with Chiari malformation, he would refer her to a neurosurgeon. *Id.* at 6-8, 17.

Dr. Nolan reviewed the transcript of Dr. Tormenti's deposition testimony and stated that the history Dr. Tormenti obtained from Claimant differed from the history she reported to Dr. Nolan and the history contained in her medical records. C.R. Item No. 19, at 18. For example, Claimant told Dr. Tormenti that she was asymptomatic for several years prior to September 25, 2017; however, her medical records showed that she reported back pain to her family doctor on September 21, 2017, four days prior to the alleged work incident. *Id.* Further, Dr. Nolan disagreed that Claimant sustained sprains and disc bulging on September 25, 2017, that would make her Chiari malformation symptomatic. *Id.* at 18-19. He also noted that Claimant's MRIs showed that disc degeneration was already present and symptomatic prior to the work event. *Id.* Moreover, her physical examination was benign. *Id.* at 19. Therefore, Dr. Nolan found no objective reason why Claimant could not perform her job duties. *Id.*

In a decision circulated on May 8, 2019, the WCJ determined that Claimant failed to meet her burden of proving that she sustained a disabling work-related injury on September 25, 2017. C.R. Item No. 5, WCJ Decision, Findings of Fact No. 8. In doing so, the WCJ found Claimant not credible based on her demeanor while testifying and because "[h]er testimony [was] internally inconsistent and inconsistent with the various histories that she provided to her treating physicians." *Id.*, Findings of Fact No. 6. The WCJ further found that Dr. Nolan's testimony was

8

more credible and persuasive than Dr. Tormenti's, because Dr. Tormenti's opinions were "based almost entirely on the history provided by Claimant, who [the WCJ found] not credible." *Id.*, Findings of Fact No. 7(a). The WCJ explained that Dr. Nolan's opinions were "reasonably and logically explained" and "consistent with his objectively normal examination [of Claimant,] as well as the objectively normal examinations of Dr. Tormenti." *Id.*, Findings of Fact No. 7(b)-(c). Accordingly, the WCJ denied and dismissed Claimant's Claim Petition. *Id.*, Conclusions of Law No. 2.

Claimant appealed to the Board. She first argued that substantial evidence did not support the WCJ's determination that she did not sustain a disabling work injury on September 25, 2017. C.R. Item No. 6, at 2. Claimant further argued that the WCJ erred in finding that her testimony was inconsistent, and in rejecting Dr. Tormenti's testimony in favor of Dr. Nolan's testimony, when Dr. Nolan acknowledged that, as an orthopedic surgeon, he does not treat Chiari malformation with syrinx, while Dr. Tormenti, a neurosurgeon, does treat patients with that condition. *Id.* Claimant asserted that the WCJ's credibility findings are in error and not supported by substantial evidence. *Id.*

The Board disagreed with Claimant and affirmed the WCJ's decision in an Opinion and Order issued on June 2, 2020. C.R. Item No. 8, at 3. In doing so, the Board pointed out the various inconsistencies in Claimant's testimony before the WCJ, noting that Claimant first testified that her back pain began in March of 2017, while bending, lifting, and twisting at work, and that it progressively worsened up until September 25, 2017, when she was lifting a student to transfer the student from a wheelchair to a bed and felt severe low back pain, which spread to her legs and feet and worsened later that evening to the point she could not get up. *Id.* at 2-3.

The Board also noted Claimant's acknowledgment that she injured her back previously in a motor vehicle accident, but was treated and the pain went away. *Id.* at 3. The Board next reviewed Claimant's testimony from the November 19, 2018 hearing, stating that she informed Dr. Hirsch on September 21, 2017, of a history of back pain from 2000 onward, due to a motor vehicle accident, and that the pain had been worsening with no new injury. However, the Board noted, Claimant told Dr. Tormenti that she was symptom free for some time before September 25, 2017. *Id.* at 4. Upon review of the above testimony, the Board determined that the WCJ did not err in denying Claimant's Claim Petition, as she bore the burden of proving all of the elements necessary to support an award, but failed to do so because the WCJ rejected her testimony as incredible. Moreover, because the WCJ found Claimant not credible, the Board concluded that it did not need to address her claim regarding the WCJ crediting Dr. Nolan's testimony over Dr. Tormenti's testimony. *Id.* at 4 n.2.

Claimant now petitions for review to this Court, raising two issues.[5] First, she claims that the Board erred by concluding that she did not meet her burden of establishing that a disabling work injury occurred on September 25, 2017. Second, she claims that Dr. Nolan is not a neurosurgeon and, thus, is not qualified to render an opinion on Chiari malformation with syrinx.[6]

In her brief, Claimant argues that she met her burden of proving that she sustained a disabling work injury on September 25, 2017, and that the WCJ's

---

[5] Our standard of review is limited to a determination of whether necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 684 A.2d 673, 676 n.6 (Pa. Cmwlth. 1996).

[6] In her brief, Claimant argues these two issues as one. For ease of discussion, we address them separately.

10

finding to the contrary is not supported by substantial evidence.  Claimant's Brief at 19.  Specifically, she claims that after experiencing back and neck pain beginning in March of 2017, her pain progressively worsened and ultimately culminated in her suffering a disabling work injury on September 25, 2017, when she experienced a severe onset of pain in her neck, back, and extremities while lifting a nearly 75-pound student.  *Id.* at 5, 10, 19.  Her medical expert, Dr. Tormenti, opined that her severe onset of pain was the result of a preexisting Chiari malformation that became acutely symptomatic due to her work-related physical activities.  Thus, she asserts that her Claim Petition should have been granted.

Employer responds that the WCJ rejected Claimant's testimony as not credible based upon her demeanor while testifying and because her testimony regarding the onset of her injuries was inconsistent.  Employer additionally notes that because Dr. Tormenti's medical opinions were based almost exclusively on the history provided to him by Claimant, his testimony was also rejected.  Therefore, Employer claims that Claimant failed to meet her burden of proving a disabling work injury based on the WCJ's credibility determinations.

In a claim petition proceeding, the burden of proving all necessary elements to support an award rests with the claimant.  *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592, 595 (Pa. 1993).  The claimant must establish that her injury was sustained in the course and scope of her employment and is causally related thereto, and that the injury resulted in a disability.  *McCabe v. Workers' Compensation Appeal Board (Department of Revenue)*, 806 A.2d 512, 515-16 (Pa. Cmwlth. 2002).[7]  The claimant must also establish that the disability continues through the pendency of the claim petition

---

[7] In this context, disability is synonymous with a loss of earning power.  *McCabe*, 806 A.2d at 515-16.

11

proceedings. *Soja v. Workers' Compensation Appeal Board (Hillis-Carnes Engineering Associates)*, 33 A.3d 702, 707 (Pa. Cmwlth. 2011). Where the causal relationship between the work incident and the injury is not obvious,[8] unequivocal medical evidence is necessary to establish that relationship. *Roundtree v. Workers' Compensation Appeal Board (City of Philadelphia)*, 116 A.3d 140, 145 (Pa. Cmwlth. 2015).

In reviewing a substantial evidence[9] challenge, we "consider the evidence as a whole, view the evidence in a light most favorable to the party [that] prevailed before the WCJ, and draw all reasonable inferences which are deducible from the evidence in" that party's favor. *Frog, Switch & Manufacturing Co. v. Workers' Compensation Appeal Board (Johnson)*, 106 A.3d 202, 206 (Pa. Cmwlth. 2014) (internal quotation marks omitted). Where both parties present evidence, it does not matter if there is evidence that supports a contrary finding; the only question is whether there is evidence that supports the findings that were made. *McCabe*, 806 A.2d at 515. This Court must accept the WCJ's findings if, upon consideration of the evidence as a whole, the findings are supported by competent evidence of record. *Inglis House*, 634 A.2d at 595. "The WCJ is the ultimate fact finder and has complete authority for making all credibility" and evidentiary weight determinations. *Rife v. Workers' Compensation Appeal Board (Whitetail Ski Co.)*,

---

[8] "An obvious relationship exists where the claimant's injuries immediately and directly or naturally and probably result from a work incident; in such cases, the fact finder is not required to depend alone, or at all, upon medical testimony to find the causal connection." *Metelo v. Workmen's Compensation Appeal Board (Old Original Bookbinders Restaurant)*, 642 A.2d 653, 655 (Pa. Cmwlth. 1994).

[9] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *City of Philadelphia v. Workers' Compensation Appeal Board (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011).

12

812 A.2d 750, 755 (Pa. Cmwlth. 2002). It is well settled that a "WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted." *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1156 (Pa. Cmwlth. 1998). In the rare instances where we review a credibility determination, "[w]e must view the reasoning as a whole and overturn the credibility determination only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational." *Casne v. Workers' Compensation Appeal Board (STAT Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008).

In her brief, Claimant contends that she met her burden of proof because her testimony established that a disabling work injury occurred on September 25, 2017, when she suffered pain after lifting a student, and her medical expert, Dr. Tormenti opined that the pain was a result of a Chiari malformation revealed on her MRI that became symptomatic due to the physical nature of her job. As such, she asserts that she presented sufficient evidence of her claim. However, as noted above, it does not matter that there is evidence in the record which supports a factual finding contrary to that made by the WCJ; rather, the pertinent inquiry is whether there is any evidence in the record that supports the WCJ's factual finding. *McCabe*, 806 A.2d at 515. Moreover, here, the WCJ did not find that Claimant presented insufficient evidence to support her claim; rather, the WCJ found that the evidence Claimant presented was simply not credible.

Claimant testified before the WCJ on two occasions. When a witness testifies live before a WCJ, the WCJ's observation of the witness's demeanor alone is sufficient reason to support his determination of credibility. *Casne*, 962 A.2d at 18 (citing *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*,

828 A.2d 1043 (Pa. 2003)). Here, the WCJ stated that "[h]aving observed Claimant's comportment and demeanor during [her] testimony and having reviewed the evidence of record in its entirety, this [WCJ] rejects Claimant's testimony as not credible." C.R. Item No. 5, WCJ Decision, Findings of Fact No. 6. This finding alone is sufficient to support the WCJ's rejection of Claimant's testimony.

Additionally, the WCJ found Claimant not credible because "[h]er testimony [was] internally inconsistent and inconsistent with the various histories that she provided to her treating physicians." C.R. Item No. 5, WCJ Decision, Findings of Fact No. 6. Before this Court, Claimant does not challenge the WCJ's, and thus the Board's, finding that her testimony was inconsistent. Instead, in her brief, she attempts to counter her inconsistencies by offering explanations for the inconsistencies that were not presented to the WCJ or the Board. For example, Claimant now claims on appeal to this Court that she informed Dr. Tormenti that she was asymptomatic for back pain for several years before September 25, 2017, because the pain that developed that day was more severe than her prior pain. Claimant's Brief at 12-13. Thus, the pain that began developing in March of 2017 did not seem important to mention. *Id.* This Court cannot consider "factual averments contained in a brief which were not part of the record before the administrative agency . . . ." *Anam v. Workmen's Compensation Appeal Board (Hahnemann)*, 537 A.2d 932, 934 (Pa. Cmwlth. 1988). As such, we reject Claimant's belated attempt to explain why her testimony was inconsistent.

The Board held that the WCJ's finding that Claimant was not credible negated her ability to sustain her burden of proof. The finding that Claimant was not credible also led the WCJ to find Dr. Tormenti's testimony not credible because "his opinions [were] based almost entirely on the history provided by Claimant[.]"

14

C.R. Item No. 5, WCJ Decision, Findings of Fact No. 7(a). Claimant had the burden of proving that her Chiari malformation became symptomatic during her employment and was causally related to her employment. *McCabe*, 806 A.2d at 515-16. Because her testimony regarding the onset of her pain, and Dr. Tormenti's testimony relating the Chiari malformation to her employment, were rejected by the WCJ, Claimant could not meet that burden. As such, we reject Claimant's contention that she sustained her burden of proving a disabling work injury.

Claimant's second claim is that the WCJ erred by accepting the testimony of Dr. Nolan over that of Dr. Tormenti because Dr. Nolan is not a neurosurgeon, has not treated patients with Chiari malformation with syrinx, and is not capable of performing the corrective surgery. Employer responds that Dr. Nolan is a medical doctor who sees patients with Chiari malformation with syrinx, is familiar with the condition, and is trained in the treatment of spine disorders. As such, according to Employer, Dr. Nolan was qualified to render an opinion.

The Board did not discuss Dr. Nolan's qualifications in its decision, but instead concluded that because the WCJ deemed Claimant and her medical expert not credible, it was irrelevant whether Dr. Nolan was qualified to render an opinion regarding her Chiari malformation with syrinx. We agree with the Board. A claimant has the burden at all stages of "a claim petition proceeding, [and] the burden never shifts to [the] employer to show that the disability has ceased or been reduced." *Soja*, 33 A.3d at 707. Here, Claimant had the burden to establish that she sustained a disabling work injury. Specifically, she claimed that the pain caused by her Chiari malformation with syrinx was a result of her physical job duties. It is impossible for her to sustain her burden of proof, however, when the WCJ found that both she and her medical expert were not credible.

15

However, even if we reached the issue, Claimant would not prevail. In workers' compensation cases, "[a]n expert medical witness . . . is qualified to testify outside of his medical specialty, and any objection to that testimony goes to the weight of the evidence, not its competency." *Williams v. Workers' Compensation Appeal Board (USX Corporation-Fairless Works)*, 862 A.2d 137, 145 (Pa. Cmwlth. 2004) (a claim that the WCJ could not credit an anesthesiologist over a psychologist with regard to the claimant's psychological injuries was rejected by this Court). The WCJ, not this Court, determines the weight of the evidence. *Id.*

For the above reasons, Claimant has not established that the Board erred in determining that she failed to meet her burden of proving the elements of her Claim Petition. Accordingly, we affirm the Board's order.

_____
MICHAEL H. WOJCIK, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Angela Nichols,                :
                                         :
                Petitioner   :
                                           :
                v.               : No. 777 C.D. 2020
                                           :
Workers' Compensation Appeal   :
Board (School District of        :
Philadelphia),                    :
                                           :
                Respondent :

## **O R D E R**

AND NOW, this 9th day of February, 2022, the order of the Workers' Compensation Appeal Board, dated June 2, 2020, is hereby AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge