IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Linda Rafaele,                          :
               Petitioner           :
                                 :
           v.                          :   No. 1334 C.D. 2016
                                 :   Submitted: January 13, 2017
Workers' Compensation Appeal          :
Board (Life Path, Inc.),              :
              Respondent           :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT               FILED: April 12, 2017

          Linda Rafaele (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) denying her claim petition under the Pennsylvania Workers' Compensation Act (Act).[1]  In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that Claimant did not establish a work injury.  Claimant contends that the Board erred because the WCJ's conclusion is not consistent with the evidence; Employer's own medical expert acknowledged that she sustained a work injury.  We affirm.

          Claimant worked for Life Path, Inc. (Employer) as an adult daycare services assistant.  Claimant reported to Employer that on July 26, 2013, she injured her back and right leg while attempting to change a client's diaper.  Employer issued a temporary notice of compensation payable recognizing a low

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

back strain. On September 12, 2013, following receipt of evidence that Claimant was not injured, Employer issued a notice stopping temporary compensation and a notice of compensation denial. Claimant then filed a claim petition seeking total disability benefits based on an average weekly wage of $334.86. Employer filed a "protective Termination Petition" stating that as of April 10, 2014, Claimant had fully recovered from any injury she may have suffered. Notes of Testimony (N.T.), 9/18/2014, at 5; Reproduced Record at 31a (R.R. __).

Before the WCJ, Claimant testified that she had worked for Employer for approximately three years when she injured her back while she and a co-worker were changing a client's diaper. The client weighed approximately 200 pounds. While undressing the client, Claimant experienced a sharp pain on the right side of her back and leg. She excused herself to rest. She advised her supervisor of the injury but completed her scheduled work shift.

The injury occurred on a Friday afternoon. By Monday, the pain had increased, causing Claimant to visit a medical center, where she was prescribed a muscle relaxer and physical therapy, and instructed to apply ice to the injury. Claimant was restricted from working through August 22, 2013. On August 26, 2013, Claimant returned to work at a light duty position on a part-time basis.

Claimant's light duty job consisted of sitting in a chair and watching a patient in a wheelchair. Because of pain she experienced, Claimant returned to the medical center, which prescribed a Lidocaine cream. However, until the cream was available, the physician treated her with Lidocaine patches. The physician restricted Claimant from working through September 4, 2013.

2

On September 5, 2013, Claimant returned to the medical center, and she was released to light duty work. However, Employer did not offer her a light duty position. Instead, Employer denied her workers' compensation claim and told her not to return to work unless a doctor released her to full duty.

Claimant then went to see her family physician, who concluded she was unable to work and recommended physical therapy. Two weeks later he released her to light duty work and referred her to Roy A. Jackel, M.D. a neurologist, who began treating Claimant on December 26, 2013. Dr. Jackel injected Lidocaine into her muscle to help with the pain. Claimant testified that despite the injections she continues to experience low right-side back pain, pain in her right thigh when she sits or stands too long, and numbness in the bottom of her right foot. She continues to treat the pain with ice every four hours and, in fact, excused herself during the WCJ hearing to apply ice.

Employer offered a video surveillance tape taken on August 29 and 30, 2013. It showed Claimant walking from her house to her driveway and loading a number of items into her vehicle. It also showed her driving to a friend's house; driving to the grocery store; placing bags of grocery items in her trunk and carrying the bagged items into her house.

On cross-examination, Claimant testified that she visited the medical center on August 27, 2013, because it was too painful for her to do her part-time sedentary job. She acknowledged that when she returned to the medical center on September 5, 2013, she reported that she had stayed at home the "whole week before" because her pain was so bad she could not drive or do anything. N.T. 9/18/2014, at 23; R.R. 49a. Claimant explained that the Lidocaine patch had not

3

relieved her pain, but the Lidocaine cream, which she received on August 27th, eased her pain to the point that she was able to do chores, such as grocery shopping. She also explained that the items she was seen carrying in the video were not heavy. When counsel for Employer questioned her about a record from the medical center that showed that Claimant did not receive the Lidocaine cream until September 4, 2013, Claimant responded that she was unsure of the date.

Claimant presented the testimony of Dr. Jackel, her treating neurologist. Because Claimant reported tightness and spasms in her low back, he injected Lidocaine into the muscle for this problem. To date, Claimant has had four office visits; at each one he gave her an injection of Lidocaine. Dr. Jackel believes Claimant is improving because she reports that the pain no longer radiates into her right leg. Dr. Jackel did not offer a specific diagnosis. He explained that Claimant's injury probably began when she bent over at work. When asked if Claimant could return to her pre-injury position, he stated that Claimant does not believe she can return to work because of the physical demands. When asked if Claimant was limited to sedentary work, he stated that Claimant feels that she is capable of light duty work that does not involve lifting.

On cross-examination, Dr. Jackel acknowledged that in 2006 Claimant had treated with another doctor in Dr. Jackel's group. Those records indicated that Claimant had complained of pain in her left buttock and leg in 2004. In 2006, she advised that her pain had worsened and spread to her right side. Medical testing established that Claimant had a postural abnormality; specifically, her right shoulder and left hip were rotated anteriorly. When asked if he had restricted Claimant from working, Dr. Jackel acknowledged that his opinion about

4

her ability to work was "from what she told me, in terms of her abilities, in terms of doing her, her job." N.T., 5/13/2014 (Jackel Depo.) at 22; R.R. 100a.

Employer presented the deposition testimony of Neil Kahanovitz, M.D., an orthopedic surgeon. He conducted an independent medical examination of Claimant on April 10, 2014. Claimant denied any prior history of back problems until the 2013 event at work. Dr. Kahanovitz examined Claimant and did not find any objective medical reasons for her complaints of pain. As a result of the history taken from Claimant, he concluded that she had suffered a work-related thoracolumbar strain from which she had fully recovered. He stated that the strain should have resolved within a few days to 12 weeks.

Employer also presented the testimony of Thomas Lyman and Andrew Rodgers, the private investigators who surveilled Claimant in 2013 and 2014. They both testified that their surveillance videos accurately depicted Claimant's activities on the days in question.

The WCJ's decision summarized the video surveillance evidence for August 29 and 30, 2013. The video showed Claimant repeatedly walking back and forth between her house and her vehicle, loading multiple items in her vehicle, one of which appeared to be a mirror. It also showed her driving; pushing a grocery cart; repeatedly shoving her grocery cart into a stack of carts to get it to stack; and carrying up to four grocery bags at a time into her residence. All of her movements were fluid. The surveillance of March 6 and 7, 2014, showed Claimant carrying boxes and a large trash bag to her vehicle; driving to several locations; getting in and out of the car; grocery shopping; carrying groceries; bending over to pick up a recycling container and pulling an empty trash can.

5

The WCJ found that Claimant's activities in August of 2013 were completely inconsistent with Claimant's testimony about her symptoms. On August 27, 2013, before the video was done, Claimant informed the medical center that her pain was too severe to work part-time in a sedentary position. On September 5, 2013, Claimant reported to the medical center that because of her pain, she had spent the prior week in her house, unable to drive or do anything.

The WCJ found Claimant not credible. This was based on her demeanor at the hearing, the surveillance videos, and her incorrect statement to Dr. Kahanovitz that she had no back problems prior to 2013. The WCJ also rejected the testimony of Dr. Jackel because he did not offer a diagnosis of Claimant's condition and based his opinion that Claimant could not work on her complaints of pain, as opposed to any objective examination findings. Although Dr. Kahanovitz diagnosed Claimant with a thoracolumbar strain, this opinion was not accepted because it was based upon Claimant's rejected testimony about her injury.

The WCJ denied Claimant's claim petition and dismissed Employer's petition to terminate compensation benefits as moot. Claimant appealed to the Board, which affirmed the WCJ. Claimant then petitioned for this Court's review.[2]

---

[2] This Court's review of an order of the Board determines whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, and whether constitutional rights were violated or an error of law was committed. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Crisman)*, 39 A.3d 1028, 1033 n. 6 (Pa. Cmwlth. 2012). In addition, review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court. *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002). Capricious disregard of the evidence exists "when there is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result." *Station Square Gaming L.P. v. Pennsylvania Gaming Control Board*, 927 A.2d 232, 237 (Pa. 2007).

On appeal, Claimant argues that it was improper for the WCJ to deny her claim petition because Employer's doctor acknowledged that Claimant sustained a work injury. Claimant also asserts that the WCJ's findings are contrary to and unsupported by the evidence.

In her first issue, Claimant contends that the medical evidence is uncontroverted that Claimant sustained a work injury. The Board rejected Dr. Kahanovitz's opinion because Claimant had not informed him of her prior history of back problems. Claimant contends that the Board erred because Dr. Kahanovitz was not asked whether he would have changed his opinion based on this information. Further, he had her full medical history by the time of his July 28, 2014, deposition.

Employer responds that the WCJ rejected Claimant's testimony about her work injury for several reasons: her demeanor, the surveillance evidence, the rejection of Dr. Jackel's testimony and the lack of any objective medical evidence to support her alleged pain. Further, Dr. Kahanovitz based his finding that Claimant sustained a work injury on Claimant's account of the incident, which the WCJ rejected as not credible. Simply, Dr. Kahanovitz's statement that Claimant suffered a work injury lacked a foundation. We agree with Employer.

When a claimant files a claim for benefits, it is her burden to establish that a compensable injury was sustained and continues throughout the pendency of the claim petition. *Soja v. Workers' Compensation Appeal Board (Hillis-Carnes Engineering Associates)*, 33 A.3d 702, 707 (Pa. Cmwlth. 2011). "[S]urveillance films are properly admitted for the purpose of impeaching the claimant's testimony and/or the claimant's evidence." *Rossi v. Workmen's Compensation Appeal Board*

*(City of Hazleton)*, 642 A.2d 1153, 1156 (Pa. Cmwlth. 1994). "[S]uch evidence is admissible for the purpose of establishing facts." *Id*. at 1157.

The WCJ rejected Claimant's testimony that she was injured at work as not credible, listing five significant factors:

> a. The surveillance activities revealed by the DVD taken on August 29, 2013 in particular, but also on August 30, 2013 are inconsistent with Claimant's testimony reflecting her extreme symptoms. This Judge finds particularly compelling Claimant's activities on August 29, 2013 repeatedly walking back and forth from a residence to a vehicle and carrying multiple items, bending and moving the items in the car. Importantly, she was able to carry multiple grocery bags at once, up to four at a time and repeatedly shove and push grocery carts to get them to stack into one another. This activity is observed at a time when Claimant claims she was totally disabled and not even able to do light-duty half days sitting and observing clients.
>
> b. Claimant's testimony before this Judge on September 18, 2014, more than a year after the injury, and that she had to take a break and apply ice to her back is simply not credible in light of negative MRI [magnetic resonance imaging] and EMG [electromyogram] studies.
>
> c. This Judge has observed Claimant's demeanor and comportment during her testimony, and her testimony is not persuasive.
>
> d. This Judge has rejected the testimony of Dr. Jackel as not credible.
>
> e. Claimant did not reveal her prior history of back problems to Dr. Kahanovitz.

WCJ Decision, Findings of Fact 9(a)-(e). Before this Court, Claimant addresses only the final factor and argues that the WCJ rejected Dr. Kahanovitz's opinion because he did not have her complete medical history. However, the WCJ listed

8

all five of the above factors as "[s]ignificant factors" in her determination that "Claimant's testimony [i]s not credible to establish she was injured at work on July 26, 2013." *Id*. Claimant's failure to relay her prior history of back problems to Dr. Kahanovitz was only one of many reasons for the WCJ's finding that Claimant was not credible.

Both doctors' opinions were based on Claimant's account of the work injury and her complaints of pain. Once the WCJ found that account not credible, it was fatal to each physician's assumption that Claimant suffered a work injury. We reject Claimant's first contention of error.

In her second issue, Claimant argues that the WCJ wrongly found that Claimant did not sustain a work injury. Claimant related a specific injury that occurred at work to her supervisor, and she promptly sought medical attention. Further, she testified that a co-worker was present at the time of the injury. Employer could have called this witness to testify, but did not do so, presumably because her testimony would have corroborated Claimant's testimony. Claimant argues the WCJ's decision was not well-reasoned because it disregarded all of her evidence as not credible. Likewise, Claimant challenges the surveillance video because it did not establish that she lifted anything heavy.

Employer responds that because Claimant had the burden of proof, it had no obligation to present the co-worker's testimony. This was Claimant's opportunity. Although Claimant testified that she sustained a work injury, the WCJ chose not to accept that testimony as credible. This was the WCJ's prerogative.

9

Claimant focuses on the inadequacy of the surveillance videos. The surveillance video was done at a point in time when Claimant contended she could not work at a part-time job requiring her to sit in a chair. She also claimed that at this time, she was house-bound by her pain. These claims were contradicted by the video, which showed Claimant bending, lifting and stretching, repeatedly and with apparent ease. The WCJ found, as fact, that the surveillance video contradicted Claimant's testimony about a work injury.

We reject Claimant's second contention of error. Because it was Claimant's burden to prove she suffered an injury at work, Employer had no obligation to present any witnesses. The WCJ is free to reject the testimony of any witness in whole or in part. *Minicozzi v. Workers' Compensation Appeal Board (Industrial Metal Plating Inc.)*, 873 A.2d 25, 28 (Pa. Cmwlth. 2005). A well-reasoned opinion is one "containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." Section 422(a) of the Act, 77 P.S. §834. The WCJ's credibility findings are explained and well-reasoned. Claimant simply disagrees with them.

The surveillance evidence related to Claimant's credibility that she was incapacitated, not to whether she could lift a certain amount of weight. Employer was not obligated to establish that Claimant could perform her pre-injury job unless and until it was determined that Claimant had actually suffered a work injury.

The WCJ held that Claimant did not prove she was injured at work. In so holding, the WCJ relied upon the video surveillance to show that Claimant was

10

not credible about her claims of extreme symptoms of pain. Claimant's case was not based on objective medical evidence, but on her subjective complaints of pain. Because she was found not credible, she did not meet her burden of proof.

For the above-stated reasons, we affirm the Board.

_____
MARY HANNAH LEAVITT, President Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Linda Rafaele,              :
         Petitioner        :
                         :
         v.                 :   No. 1334 C.D. 2016
                         :
Workers' Compensation Appeal     :
Board (Life Path, Inc.),          :
         Respondent       :

## **O R D E R**

AND NOW, this 12th day of April, 2017, the order of the Workers' Compensation Appeal Board, dated July 6, 2016 is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge