IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Leonard Patrick,                         :
                                         :
                    Petitioner           :
                                         :
          v.                             : No. 652 C.D. 2023
                                         : Submitted: July 5, 2024
Velocity Rail Solutions, Inc.            :
(Workers' Compensation Appeal            :
Board),                                  :
                                         :
                    Respondent :


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE MATTHEW S. WOLF, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                          FILED:  September 12, 2024


          Leonard Patrick (Claimant), appearing *pro se*, petitions for review from a May 17, 2023 order of the Workers' Compensation Appeal Board (Board), affirming a decision of a workers' compensation judge (WCJ), denying Claimant's Claim Petition under the Workers' Compensation Act (Act).[1]  For the reasons that follow, we affirm.

          On January 25, 2022, Claimant filed a Claim Petition, alleging that he sustained a perforated eardrum and a loss of hearing in his right ear, secondary to

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

noise at work. Certified Record (C.R.) at 6.[2] Claimant sought total disability benefits from December 1, 2019, and ongoing. *Id.* at 8. Employer filed an Answer to the Claim Petition, denying all material allegations. *Id.* at 13. The matter was then assigned to a WCJ for disposition. *Id.* at 11.

Claimant appeared at a hearing held before the WCJ on April 12, 2022.[3] Claimant testified that he was employed by Velocity Rail Solutions, Inc. (Employer) as a diesel and hydraulic technician. He fueled engines in train yards and other locations accessible to his tractor trailer. On October 6, 2019, Claimant's second day training with his supervisor, Claimant was riding as a passenger in a tractor trailer with the window down. A line of box cars came down an incline, causing a loud noise. Claimant was 10 to 20 feet from the rails and was not wearing ear protection. He felt pain in his right ear. WCJ's Decision, 10/28/22, Finding of Fact (F.F.) No. 1.[4]

That evening, while showering, Claimant suffered severe pain when soap or water entered his ear. The pain caused him to "buckle," and he rolled out of the shower and crawled into bed. WCJ's Decision, F.F. No. 1. The next morning, Claimant informed his supervisor that there was something wrong with his ear. Claimant's supervisor sent him to Concentra, an urgent care facility. *Id.*

Claimant testified that at Concentra, a doctor cleaned his ear and told him it had a "perforation." The doctor instructed him to see a specialist. WCJ's Opinion, F.F. No. 1. Claimant continued to have ear pain and approximately one

---

[2] Because the Certified Record was filed electronically and was not paginated, the page numbers referenced in this memorandum opinion reflect the electronic pagination.

[3] Claimant was represented by counsel before the WCJ.

[4] The WCJ's Decision is found at page 21 of the C.R.

month after the incident, he treated with Dr. Barbara Kreel, an ear, nose and throat doctor. Dr. Kreel performed tests and examinations. *Id.*

Claimant continued working for Employer for the next two to four weeks, but he was often sick. Claimant was "let go" by Employer in December of 2019. WCJ's Opinion, F.F. No. 1.

Claimant attributes several symptoms to the October 6, 2019 incident, including "a toppling feeling" and "low hearing out of [his] right ear." WCJ's Opinion, F.F. No. 1. Claimant testified that "[f]or a while there, there was pain. Oh, and my teeth. Like all my teeth. Like all my teeth have-I don't know if it's the air coming from the ear, but my whole mouth hurts." *Id.* Claimant testified that he did not have these symptoms prior to October 6, 2019. *Id.*

On cross-examination, Claimant testified that he is not currently working and that he is trying to establish a business in "finance and taxes." WCJ's Opinion, F.F. No. 1. Claimant denied receiving any "substantial" wages or money from the business. *Id.* Claimant testified that he was on welfare, was collecting "Covid money," and that he had received unemployment compensation benefits. *Id.*

Following his employment with Employer, Claimant worked several jobs. Claimant testified that he could not, however, drive a tractor trailer because of the "rolling" feeling. WCJ's Opinion, F.F. No. 1. Claimant tried working in emergency room registration but could not continue because of issues with his hearing. Claimant also attempted to work in a warehouse but was unsuccessful because he could not remain on his feet for extended periods due to "driver's knee." *Id.*

In addition to his own testimony, Claimant submitted Dr. Kreel's testimony to the WCJ. Dr. Kreel testified that she is board certified in

otolaryngology and first saw Claimant on November 4, 2019. Claimant told her that, approximately one month earlier, he had been exposed to a loud screeching noise at work. Claimant indicated that he had his ears flushed the following day and that exacerbated his pain and drainage. WCJ's Opinion, F.F. No. 2.

Claimant complained of pain, intermittent tinnitus, intermittent drainage and some hearing loss in his right ear. On examination, Claimant's right eardrum was wet and there was minor debris in his ear canal. Dr. Kreel removed the debris but was unable to see a perforation. Claimant's treatment plan was to start drops to dry up the ear and to obtain an audiogram. WCJ's Opinion, F.F. No. 2.

Claimant was again seen by Dr. Kreel on January 6, 2020. On that day, Claimant reported no drainage or pain. An audiogram and tympanogram were performed. Dr. Kreel explained that the tympanogram measured a large volume of air in Claimant's ear canal, consistent with a hole in his eardrum. WCJ's Opinion, F.F. No. 2.

At an April 13, 2020, virtual visit with Dr. Kreel, Claimant reported no drainage or pain. However, on June 4, 2020, Claimant called Dr. Kreel's office and reported "10/10 pain with draining, blood, and watery wax from the ear after getting soap and water in it." WCJ's Opinion, F.F. No. 2.

On September 23, 2020, Dr. Kreel observed a "dry central tympanic membrane (TM) perforation . . . ." WCJ's Opinion, F.F. No. 2. Dr. Kreel referred claimant to an otologist for surgical repair. *Id.*

On December 23, 2020, Claimant reported right ear pain and no drainage. On that date, Dr. Kreel's diagnosis was TM perforation, mild conductive hearing loss, pain, and recurrent discharge. WCJ's Opinion, F.F. No. 2.

4

Claimant was last seen by Dr. Kreel's physician's assistant on January 14, 2022. Claimant reported some recurrent drainage, trouble hearing, some ear pain, and a ringing noise. WCJ's Opinion, F.F. No. 2.

When asked about causation, Dr. Kreel indicated that Claimant's condition either resulted from his noise exposure at work or "possibly when he had his ear flushed the next day." WCJ's Opinion, F.F. No. 2. Dr. Kreel testified that Claimant has "about two percent" hearing loss "pursuant to the formula for compensation." *Id.* Dr. Kreel further testified that Claimant has mild conductive hearing loss caused by the TM perforation. *Id.*

On cross-examination, Dr. Kreel admitted she could not say for sure whether the alleged noise exposure or the irrigation that was performed the following day caused the perforation. WCJ's Opinion, F.F. No. 2. Dr. Kreel also testified that Claimant can work as long as he does not get water in his ears and is not having balance problems. *Id.*

Employer submitted an October 8, 2019, clinic note from Dr. George Dixon at Concentra. The note reflects that Claimant presented with a complaint of two days of ear discomfort with soreness and decreased hearing. Claimant attributed the symptoms to "driving in a vehicle about ten feet away from a train with squealing breaks." WCJ's Opinion, F.F. No. 3. Claimant reported clear ear drainage with no blood. *Id.*

On examination, the right external ear canal was "tender, was erythematous, and had a discharge." WCJ's Opinion, F.F. No. 3. Dr. Dixon could not visualize the TM because of impacted ear wax. *Id.* An ear wax removal procedure was performed using Cerumenex and warm water irrigation. The clinic note indicates that "the procedure was successful and well-tolerated." *Id.*

5

Following the irrigation, Dr. Dixon could see that the right TM "was red, had a loss of landmarks, had a diminished light reflex and was obscured, but had no perforation." WCJ's Opinion, F.F. No. 3. Dr. Dixon's assessment was right otitis media (*i.e.*, an ear infection). He instructed Claimant to begin an antibiotic and to follow up with an ear specialist. *Id.*

With regard to activity restrictions, the clinic note provides, "based on a careful exam of the patient, as well as the information obtained about their job duties and the mechanism of the injury, it does not appear that the presenting complaints arose out of [Claimant's] job duties in the course of [Claimant] performing those duties." WCJ's Opinion, F.F. No. 3. Dr. Dixon determined that Claimant had a "cerumen" wax plug and a serious otitis media that was not work related. *Id.* Claimant was released to full work activity on the following day, October 9, 2019. *Id.*

Employer also submitted the testimony of Eugene Stec, M.D. Dr. Stec is board certified in otolaryngology, head, and neck surgery. He examined Claimant at Employer's request on March 23, 2022. Claimant provided Dr. Stec with a history that was consistent with his testimony before the WCJ. Dr. Stec performed an exam and reviewed records, including the records from Concentra and Dr. Kreel. Dr. Stec also review Claimant's audiogram results. WCJ's Opinion, F.F. No. 4.

Dr. Stec's report (attached to his deposition transcript) reflects that Claimant presented with complaints of right ear fullness, tinnitus, and intermittent imbalance, all of which are consistent with the physical findings of right chronic TM perforation. In Dr. Stec's opinion, his physical findings of right TM perforation were "less than likely due to extreme loud noise exposure." WCJ's Opinion, F.F. No. 4. Dr. Stec opined that a noise exposure significant enough to cause a TM

perforation would also more than likely have simultaneously caused significant permanent hearing loss.[5] *Id.* Here, he noted, Claimant "has less than a [two percent] hearing loss on the right side. His binaural hearing handicap is essentially zero [pursuant to the 4th Edition of the AMA Guides to the Evaluation of Permanent Impairment]." WCJ's Opinion, F.F. No. 4.

The WCJ noted that Dr. Stec's testimony was generally consistent with his report. During his testimony, however, Dr. Stec commented further on the October 8, 2019, Concentra clinic note, testifying that at some point after the alleged noise trauma event and seeing Dr. Kreel, Claimant sustained a perforated eardrum. Dr. Stec opined that the perforation could have resulted from the otitis media or the irrigation that was performed when he was at Concentra. Dr. Stec stressed, however,

---

[5] Dr. Stec testified:

> Q. In general, how loud of a noise or what type of event would you see in order to cause a perforation?
>
> A. Usually if it is - - All right. So if it's contact trauma, like, if you were in a bar fight and somebody punched or slapped you in your ear, that, that's more of a concussive or a pressure like event where you are creating a cupping pressure down the ear canal, it doesn't take all that much, but if it is pure noise and it is the concussive sound that is associated with the noise, it would be a rather large explosion.
>
> We saw a few of them when I was in the military from the Iraq war, but it's - - The concussive force from noise or a bomb and not direct contact would be enough to cause post-concussive syndrome, knock you out, completely impair your hearing on that side, and in certain instances it could kill you.
>
> So, it's a significant concussive force that it would take from sound pressure alone to create a perforation like that.

Deposition of Eugene Stec, M.D., 8/24/22, C.R. at 248-49.

that Dr. Dixon's Concentra clinic note specifically states that Claimant "tolerated water irrigation of his ear and that [Dr. Dixon] examined the eardrum afterwards and it was intact." WCJ's Opinion, F.F. No. 4. Regardless of causation, Dr. Stec believed that Claimant's perforated eardrum would in no way prevent him from performing his full-duty job. *Id.*

On cross-examination, Dr. Stec agreed that a TM perforation can cause issues with balance, and that balance issues can be significant, especially if there is water in the ear causing nausea and pain. WCJ's Opinion, F.F. No. 4. On re-direct, Dr. Stec testified that Claimant did not exhibit apparent or significant balance issues at the time Dr. Stec examined him. *Id.* Furthermore, the Concentra records did not mention Claimant having balance issues. *Id.*

The WCJ found Claimant's testimony not credible to the extent that Claimant attributed his perforated right eardrum and related complaints to the alleged workplace noise trauma. The WCJ noted that Claimant's testimony was contradicted and/or unsupported by the contemporaneous treatment records in several respects. In this regard, Claimant testified that Dr. Dixon at Concentra told Claimant he had a perforated eardrum; however, the clinic note from Concentra indicates that Claimant was diagnosed with acute otitis media, was prescribed antibiotics, and was instructed to follow up with an ear specialist. WCJ's Opinion, F.F. No. 5. The WCJ stated, "[w]hether Claimant intentionally attempted to mislead the factfinder or simply confused the history of events, resolution of this case requires an intensive examination of the facts and Claimant's testimony cannot be relied upon." *Id.*

To the extent Claimant testified that he experienced excruciating pain after getting soap and water in his ear on the evening of the work incident, the WCJ

8

noted that this history was not documented by either the Concentra clinic note or by Dr. Kreel's initial note. Both experts in this case testified that water in the ear will cause pain if an eardrum is perforated; however, the October 8, 2019 Concentra clinic note documents that a procedure to remove a wax plug with water irrigation was well tolerated. WCJ's Opinion, F.F. No. 5.

Regardless of causation, the WCJ maintained that the issue of Claimant's disability is far from clear. Claimant testified that balance issues prevented him from driving, but there are no complaints of balance issues documented in the Concentra clinic note. Indeed, following his visit to Concentra, Claimant was released to full activity and continued working full duty as a driver for Employer for a number of weeks before being "let go." WCJ's Opinion, F.F. No. 5. Further, during the course of her testimony, Dr. Kreel did not mention that Claimant complained of balance issues throughout his multiple contacts with her between November 4, 2019, and January 14, 2022. *Id.*

The WCJ found it noteworthy that Claimant testified he suffered hearing loss significant enough "to thwart his attempts to work in certain occupations," despite the unrefuted medical evidence indicating that Claimant's degree of hearing loss is less than two percent on the right side and that his binaural hearing handicap is "essentially zero." WCJ's Opinion, F.F. No. 5. "The logical conclusion," the WCJ stated, "is that Claimant is exaggerating his degree of hearing impairment, and this further undermines his overall credibility." *Id.*

The WCJ also addressed the credibility of Drs. Kreel and Stec. To the extent either doctor unequivocally opined that Claimant sustained a compensable injury due to noise exposure or treatment for noise exposure, the WCJ rejected the testimony as lacking foundation. Furthermore, to the extent that Dr. Kreel's

9

opinions were based on Claimant's history of events as relayed to her, the WCJ found Claimant's testimony to be neither reliable nor credible. WCJ's Opinion, F.F. No. 6.

Ultimately, the WCJ denied and dismissed Claimant's Claim Petition. On appeal, the Board affirmed.[6] Claimant now appeals to this Court,[7] challenging the WCJ's determination that he did not suffer a disabling injury while working for Employer.[8]

At the outset, we note that in a claim petition proceeding, the claimant bears the burden of proving all elements necessary to support an award. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). The claimant bears the burden of proving that he suffers from a work-related injury that occurred in the course and scope of his employment and that the injury resulted in a disability. *McCabe v. Workers' Compensation Appeal Board (Department of Revenue)*, 806 A.2d 512, 515-16 (Pa. Cmwlth. 2002).[9] The claimant must also establish that the disability continues through the pendency of the claim petition

---

[6] Claimant appeared *pro se* before the Board.

[7] This Court's review is limited to determining whether the WCJ's findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *DiLaqua v. City of Philadelphia Fire Department (Workers' Compensation Appeal Board)*, 268 A.3d 1, 4 n.5 (Pa. Cmwlth. 2021). "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Waldameer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003).

[8] By *per curiam* order dated November 6, 2023, Employer was precluded from filing a brief in this action for failure to comply with this Court's order dated September 29, 2023.

[9] Under the Act, the term "disability" is synonymous with loss of earning power. *Donahay v. Workers' Compensation Appeal Board (Skills of Central PA, Inc.)*, 109 A.3d 787, 792 (Pa. Cmwlth. 2015).

proceedings. *Soja v. Workers' Compensation Appeal Board (Hillis-Carnes Engineering Associates)*, 33 A.3d 702, 707 (Pa. Cmwlth. 2011). Where the causal relationship between the work incident and the disability is not obvious, unequivocal medical evidence is necessary to establish it. *Dennis v. Inglis House (Workers' Compensation Appeal Board)*, 303 A.3d 559, 564 (Pa. Cmwlth. 2023).[10]

In performing a substantial evidence analysis, we must view the evidence in a light most favorable to the party who prevailed before the WCJ. *West Penn Allegheny Health System, Inc. v. Workers' Compensation Appeal Board (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021). Where both parties present evidence, it is immaterial that there is evidence in the record that supports a factual finding contrary to the one made by the WCJ. *Id.* The pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding. *Id.*

The WCJ is the fact finder, and it is solely for the WCJ to assess credibility and resolve conflicts in the evidence. *Hawbaker v. Workers' Compensation Appeal Board (Kriner's Quality Roofing Services)*, 159 A.3d 61, 69 (Pa. Cmwlth. 2017). It is well settled that a "WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted." *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1156 (Pa. Cmwlth. 1988). In rare instances where we review a credibility determination, "[w]e must view the reasoning as a whole and overturn the credibility determination only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational."

---

[10] "An obvious relationship exists where the claimant's injuries immediately and directly or naturally and probably result from a work incident; in such cases, the fact finder is not required to depend alone, or at all, upon medical testimony to find the causal connection." *Metelo v. Workmen's Compensation Appeal Board (Old Original Bookbinders Restaurant)*, 642 A.2d 653, 655 (Pa. Cmwlth. 1994).

*Casne v. Workers' Compensation Appeal Board (STAT Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008).

Based on our review of the record, we agree with the WCJ and Board that Claimant did not meet his burden to establish that he was entitled to disability benefits. Claimant's testimony concerning the workplace noise trauma and his alleged disability were belied by his medical records. Contrary to Claimant's testimony, Dr. Dixon at Concentra did not diagnose him with a perforated eardrum. The Concentra clinic note does not mention a perforated eardrum; rather, it indicates that Claimant was found to have "a cerumen wax plug as well as an underlying serous [sic] otitis media which is not work related." C.R. at 289. Furthermore, Claimant's testimony that he experienced excruciating pain in the shower on the evening of the incident (implying that he was suffering from a perforated eardrum at that time) is also contradicted. The clinic note from Concentra, taken two days after the alleged incident, does not mention the shower episode. Furthermore, it is apparent that Claimant did not mention the shower episode to Dr. Kreel at his initial visit with her on November 4, 2019.[11] Because both experts in this case agree that a

_____

[11] During cross-examination, Dr. Kreel testified:

> Q. Okay. Now, there is no mention in that - - in [Claimant's] report to you of him getting soap and water in his ear the day after the alleged incident, correct?
>
> A. No. He just said that he had been using some peroxide and alcohol. When he got water in his ears, they hurt after he had had his ears flushed.
>
> Q. He didn't specifically tell you about an incident at home where he got soap and water in his ear?
>
> A. No.

**(Footnote continued on next page…)**

person with a perforated eardrum will experience intense pain when water enters the ear,[12] it stands to reason that Claimant would have related the details of the shower episode to the physicians he saw soon after the alleged noise incident. Even more telling is the fact that the Concentra clinic note reflects that Claimant's ear was irrigated with water and that procedure was "well-tolerated." C.R. at 290. Clearly, if Claimant had a perforated eardrum at the time of his visit with Concentra, he would have exhibited extreme pain when the irrigation was performed. That was not the case.

Based on these inconsistencies, the WCJ found Claimant's testimony not credible. We are bound by that credibility determination on appeal. *Hutz v. Workers' Compensation Appeal Board (City of Philadelphia)*, 147 A.3d 45, 54 (Pa. Cmwlth. 2016).

Dr. Kreel's testimony does not buttress Claimant's case. Where, as here, a WCJ rejects a claimant's testimony concerning the history of an alleged work-related injury, it follows that the expert medical testimony premised on that history is not competent. *See Sewell v. Workers' Compensation Appeal Board (City of Philadelphia)*, 772 A.2d 93, 98 (Pa. Cmwlth. 2001) ("[e]xpert medical testimony is not rendered incompetent merely because it is premised upon the expert's assumption of the truthfulness of information provided, unless that information is not proven by competent evidence or is rejected by the WCJ.").

While the record reflects that Claimant has suffered some minimal hearing loss in his right ear as a result of a perforated eardrum, the fact remains that Claimant failed to present any competent or credible evidence supporting his

---

Deposition of Barbara Kreel, M.D., 5/31/22, C.R. at 168.

[12] *See* Deposition of Dr. Kreel, C.R. at 202; Deposition of Dr. Stec, C.R. at 260.

13

assertions that the perforation was the result of a work-related incident. In the absence of any credible testimony supporting Claimant's version of events, we must conclude that the WCJ properly dismissed his Claim Petition.

Accordingly, the order of the Board is affirmed.[13]

_____
MICHAEL H. WOJCIK, Judge

Judge McCullough did not participate in the decision of this case.

---

[13] To the extent Claimant's brief indicates that he is seeking to supplement the record in this action with additional facts and evidence, an appellate court is limited to considering only those facts that have been duly certified in the record on appeal. *Kozicki v. Unemployment Compensation Board of Review*, 299 A.3d 1055, 1063 (Pa. Cmwlth. 2023). "For purposes of appellate review, that which is not part of the certified record does not exist." *Id.* Accordingly, we will not accede to Claimant's request.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Leonard Patrick,            :
                                 :
               Petitioner    :
                                 :
              v.            :  No. 652 C.D. 2023
                                 :
Velocity Rail Solutions, Inc.    :
(Workers' Compensation Appeal  :
Board),                      :
                                 :
              Respondent :

# **O R D E R**

AND NOW, this 12th day of September, 2024, the May 17, 2023 order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge